THE STATE, EX REL. UNIVERSAL DESTRUCTOR CO., v.
WIEGAND, MAYOR AND DIRECTOR OF PUBLIC WORKS.

*Mandamus—Writ lies to compel performance of duty
specifically enjoined by law—An extraordinary remedy,
issued in emergency, when relator clearly entitled thereto
—Lakewood mayor as ex-officio director of public works
—Not required to execute garbage crematory contract se-
cured from council—Mayor to contract and council to ap-
prove same—Article XIII, Sections 1, 2 and 3, Charter of
Lakewood—Sections 4211, 4246, 4323, 4328 and 4329,
General Code—Exercise of discretionary power not com-
pelled by mandamus, when.*

1. In order to entitle relator to a writ of mandamus, the re-
spondent must refuse or neglect to perform a duty
specifically enjoined upon him by law.
2. A writ of "mandamus" is a remedy extraordinary, and
can only be issued in cases of emergency, when there is
no plain and adequate remedy at law, and relator, under
the law and record, is clearly and plainly entitled to writ.
3. Where Charter of City of Lakewood, Article XIII, Sections
1, 2 and 3, provided that mayor, as *ex officio* director of
public works, had power to contract, subject to approval
of the council, person having secured from the council
a garbage contract for construction of crematory, had
no right to writ of mandamus to compel mayor to execute
such contract in view of Sections 4211, 4246, 4323, 4328
and 4329, General Code.
4. Mandamus will not lie to compel the exercise of a discre-
tionary power unless the power is exercised flagrantly and
with gross abuse of sound discretion.

(Decided May 16, 1927.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. R. G. Curren,* for plaintiff in error.
*Mr. Wm. L. David,* director of law, for defendant
in error.

SULLIVAN, P. J.   This is an action in mandamus and is here on proceedings in error to the court of common pleas of Cuyahoga county, and a writ is sought to compel the respondent, Edward A. Wiegand, as mayor and director of public works of the city of Lakewood, Ohio, in his capacity as *ex officio* director of public works of the city, to execute a contract with the Universal Destructor Company, the relator, whose terms provide for the building of a garbage crematory at a figure of $70,485.   The council, upon a reconsideration of the bids, awarded the contract for the construction of the crematory to the Universal Destructor Company, the relator, and the mayor, as director of public works, refused to execute the contract.

It is a clashing of authority between the legislative and executive departments of the city government, which is operating under a charter of its own, the council claiming the authority to award the bid, and the director of public works denying the same, and both claiming authority under the provisions of the charter for their respective acts.

It is well settled that in order to entitle the relator to a writ of mandamus the respondent must refuse or neglect to perform a duty specifically enjoined upon him as director of public works by the law.   Therefore, to determine whether the relator is entitled to the writ it is necessary that the duty to be performed be incorporated in the law, because an official duty cannot be compelled which is not enjoined by legal authority, and this authority must expressly and unambiguously appear in the law itself, whether it be a provision of the charter or of the statute of the state, or both.

The relator seeks this extraordinary writ because the respondent refuses to execute the contract awarded by the council to it as the lowest and best bidder for the crematory. Therefore, there must be express legal authority in the charter or the statute authorizing the council to award the bid, and compelling the director of public service to execute the contract thereupon and thereafter.

We eliminate much that is confusing in the case, if we adhere to the fundamental proposition that a writ of mandamus is a remedy extraordinary, and can only be issued in cases of emergency, when there is no plain and adequate remedy at law, and where, under the law and the record, the relator is clearly and plainly entitled to the writ. If it is a question discretionary with the respondent, the court has no right to interfere, unless it appears that the transaction is tainted with fraud, or that there is a gross abuse of sound discretion; and this element does not appear in this record, for the reason that the transaction is in no manner tainted with collusion, conspiracy, or fraud. It is simply a question of the interpretation of the provisions of the charter and the laws of Ohio with relation to the power and authority of the council as a legislative body, and of the mayor and director of public service with respect to executive duty.

Under the terms of the charter, the legislative powers of the city of Lakewood, except as limited by the charter, are vested in a council of five members, elected at large, and the charter provides with respect to the respondent mayor that he shall be *ex officio* director of public works and shall have direct charge of the department of public works,

and in addition there are various and numerous duties relating to the department of public works which are enjoined upon the mayor and director of public works *ex officio* by the express provisions of the charter, and they seem to be sufficiently inclusive to take in the entire range of public works as they affect the municipality, and it is significant that these duties of the respondent are all under the heading, "The Executive."

A fair and reasonable interpretation of the charter is that the executive power and the legislative power are separate and distinct legal entities, and each is confined to its own duties and obligations under the charter, separate and distinct from the other branch, except when the terms of the charter itself prescribe joint duties. Section 3 of the charter provides:

"The mayor shall be *ex officio* the director of public safety and the director of public works and as such shall exercise all powers and perform all duties delegated to and conferred upon the director of public safety and the director of public works by this charter, the ordinances of the city and the laws of the state of Ohio."

In other words, it seems to be the conception of the drafters of the charter, by reason of the extensive powers and responsibilities cast upon the director of public works, that the person holding such office shall be one capable of performing and shouldering the great responsibilities of the office, and whose judgment and skill are of such a high character that the charter obligations applying to him may be discharged with probity, efficiency, and skill. Therefore, apparently with this view in

mind, the following paragraph of article 5 of the charter, under the heading "Department of Public Works," was incorporated therein and adopted:

"Public improvements, works and repairs of all kinds shall be made by the department of public works either by direct employment of labor and the purchase of the necessary supplies and material with a separate accounting as to each improvement so made, or by contract. The council shall by ordinance determine by which method any improvement shall be made. All such contracts shall be executed in the name of the city by the director of public works and approved by the council, and shall be entered into only with the lowest best bidder after public competitive bidding. The director of public works when authorized by resolution of the council may enter into a contract not involving an expenditure in excess of $500 for supplies or any public work, without public competitive bidding."

The serious contention lies in the interpretation of the following language selected from the above quotation, to-wit, "All such contracts shall be executed in the name of the city by the director of public works and approved by the council, and shall be entered into only with the lowest best bidder after public competitive bidding." In the language quoted, there is no uncertainty or ambiguity, and hence the words interpret themselves. They are plain, unmistakable, and easy of comprehension, and when it is provided that all contracts shall be executed by the director of public works in the name of the city it means that the agreement shall be signed by the director. In other words, he becomes a party to the contract. In the instant case the relator would be one party, the respondent an-

other. Under this clause the director has the power to sign the name of the corporation by himself as director of public works, and then and thereupon there is created a contract signed by the contracting parties, and all that is needed to make it a binding contract is the approval of the city council. Therefore, under this clause quoted, the director of public works, even though he has a right to sign the name of the municipality by himself as director and thus become a party to the contract, is absolutely powerless to bind the city or to give any legal effect whatsoever to the terms and provisions of the contract, unless the contract has the approval of the legislative body, to-wit, the city council.

There is no enforceable contract under this charter until approval by the city council. It is that act which gives binding force to the terms of the contract, but under this clause and all other clauses of the charter relating to the question under discussion it is the mayor in his capacity as ex officio director of public works that merges the agreement into a legal entity called a contract, and it is this contract that must have the approval of the city council. Until such approval is made, the terms of the contract are only conditional; but the director of public service has the sole power to make the terms and execute the contract concerning them. When the instrument of writing comes before the council for its approval, it must be in form a contract, and hence this disposes of the question that in the instant case the city council can make the contract, and then and thereupon give a right to the relator to enforce, by mandamus, the execution of the contract on the part of the director of

public works. The duty of the council is to approve the contract, not to make it. The prerogative of the director is to make the contract, but not to approve it, except in so far as a signature is equivalent to such an act.

In examining the above-quoted clause and other provisions of the charter pertaining to the subject-matter under discussion, we have reached the conclusion that there is no specific duty enjoined by law in the terms of the charter, or elsewhere, compelling the mayor, as *ex officio* director, to execute any contract, upon the demand of the other contracting party, because the council consented to the terms of the contract by awarding the bid, as in the instant case. The charter, by its provisions, clothes the director with the specific responsibility of protecting the city with respect to the terms and provisions of any contract he may execute by requiring that he submit it for approval to the city council. The only duty enjoined upon the director, when the instrument of writing becomes a contract, so far as the signatures are concerned, is to submit it for approval to the city council, which can approve it, veto it, or ignore it. In any event the contract is a worthless piece of paper until it has the due approval of the legislative body of the municipality. We look in vain for any duty enjoined by the provisions of the charter, or the law, upon the director of public service to sign any contract excepting in the manner as specifically provided by the terms and provisions of the local charter. Under the terms and provisions of the charter, the approval of the contract is subsequent to the execution of the contract on the part of the director of public service. To reverse this position

would be equivalent to doing away with the approval of the instrument, which must reach the stages of a contract before the duty of approval is incumbent upon the council, and for the relator to demand the writ because the council awarded the bid would dispose of the necessity of approval, for the reason that the award of the bid would be an approval in advance of the signing of the contract on the part of the director.

As has been stated, a writ of mandamus will not issue where discretionary power is vested, unless the power is exercised flagrantly and with gross abuse of sound discretion. Under the record, the award of the bid to relator was a proceeding with which the director of public works was not connected so far as his duties prescribed by the terms of the charter were concerned, and under the provisions of the charter there is no contract unless he executes it, and then it is of no legal effect until the council approves it. There is no authority compelling the director to sign a contract to the terms of which he has not agreed. The execution of the contract is his prerogative, and even if the awarding of the bid were in the manner prescribed by the charter the director could not be compelled to sign the contract unless he agreed with its terms, and therefore the matter is discretionary, and under such circumstances a mandamus would not lie, for it cannot compel the exercise of a discretionary act. The contract which relator relies upon is one made with the council and not with the director, and the provisions of the charter do not stipulate a contract of this character, but specifically provide for a contract with the director which is made effective by the approval of the council, so that if

the director could not be compelled to sign, had the procedure been followed as is prescribed by the charter, because he had discretionary power, how can it be said that when he has no power he can be compelled by a writ of mandamus to execute the contract in question?

It is our conclusion that there is no prejudicial error in the finding of facts and conclusions of law of the court of common pleas. In writing this opinion, we keep in mind the following authorities: Sections 4211, 4246, 4323, 4325, and 4329 of the General Code of Ohio; *Yaryan* v. *City of Toledo,* 8 C. C. (N. S.), 1, 18 C. D., 259, affirmed 75 Ohio St., 307, 79 N. E., 465, and 76 Ohio St., 584, 81 N. E., 1199; *Miller* v. *Witter,* 25 N. P. (N. S.), 255; *U. S. Wood Preserving Co.* v. *Sundmaker* (C. C. A.), 186 F., 678; Sections 1, 4, 16, 45, 46, 59, and 61 of the Specifications of the Contract; *State, ex rel. Paving Co.,* v. *Board of Public Service,* 81 Ohio St., 218, 90 N. E., 389; *City of Cleveland* v. *Thomas,* 15 Ohio App., 76; *Robinson* v. *Cleveland,* 17 C. C. (N. S.), 519, 32 C. D., 261; *State, ex rel.,* v. *Board of Education,* 20 Wkly. Law Bul., 156; 19 Ruling Case Law, 1067, Section 355; *Boren & Guckes* v. *Commissioners,* 21 Ohio St., 311; *State, ex rel. Office Spec. Mfg. Co.,* v. *Betts,* 4 C. C., 86, 2 C. D., 434; Sections 1, 2, and 3 of Article XIII of the Charter of the City of Lakewood; 38 L. R. A. (N. S.), 655.

Holding these views, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.