THE STATE, EX REL. HUDSON, ADMR., *v.* KELLEY, SHERIFF, ET AL.

(Decided December 19, 1936.)

*Mr. Jacob T. Koenig,* for relator.
*Mr. Emmett D. Lusk,* for respondents.

GUERNSEY, J.   This is an action in mandamus commenced in the Court. of Appeals of Auglaize county by the state of Ohio, on relation of W. Earl Hudson, as administrator of the estate of Charles. Roth, deceased, against W. E. Kelley, as sheriff of Auglaize county, Ohio, and Harold O. Katterheinrich, as auditor of Auglaize county, Ohio.

The petition in the action, omitting the formal parts, is as follows:

"The plaintiff says that he is the duly appointed, qualified and acting administrator of the estate of Charles Roth, deceased.

"That the defendant, W. E. Kelley, is the duly elected, qualified and acting sheriff of Auglaize county, Ohio, and that Harold O. Katterheinrich is the duly elected, qualified and acting auditor of Auglaize county, Ohio.

"The relator says that his decedent, Charles Roth,

has been absent from the state of Ohio for more than thirty years last past.

"That on or about the 20th day of May, 1913, in case No. 8529 of the Auglaize Common Pleas' Court, there was found due to Charles Roth the sum of seven hundred ten and 05/100 ($710.05) dollars, which was left in the hands of the then sheriff and by him paid into the county treasury of Auglaize county, Ohio, which is shown in Sheriff Record, Docket 2, page 1.

"That on the 16th day of December, 1935, Charles Roth, whose continuous absence from the state for the last thirty years caused the Probate Court of Auglaize county, Ohio, to find a presumption of death on the part of said Charles Roth, and said presumption was entered of record and the said Charles Roth was declared dead.

"Thereupon, this relator was duly appointed, qualified and is the acting administrator of the estate of Charles Roth.

"And on the 16th day of December, 1935, as such administrator, the plaintiff demanded of the sheriff of Auglaize county, Ohio, that he issue to him as administrator of the estate of Charles Roth, deceased, a voucher or certificate to the auditor of Auglaize county, Ohio, certifying that the said relator, as administrator of the estate of Charles Roth, deceased, was entitled under case No. 8529 of the Auglaize county Common Pleas Court to the sum of seven hundred ten and 05/100 ($710.05) dollars. The said sheriff refused to issue such an order or certificate.

"Wherefore, your relator prays that a writ of mandamus issue commanding said sheriff to issue an order to the auditor of Auglaize county, Ohio, for the said sum of seven hundred ten and 05/100 ($710.05) dollars and command the said auditor, Harold O. Katterheinrich, to issue a warrant on the treasurer of Auglaize county, Ohio, for said amount to this plaintiff.''

To this petition the respondents filed their demurrer based upon the following grounds, to wit:

First. That the action was not brought within the time limited for the commencement of such actions.

Second. That the petition does not state facts which show a cause of action in favor of the plaintiff and against the defendants.

The cause is submitted upon the demurrer.

On the first ground of the demurrer it is contended by the respondents that whatever right the relator may have to the writ of mandamus prayed for herein is governed by the provisions of Sections 3040, 3041, 3042, 3043 and 286, General Code, and that under the provisions of Sections 3043 and 286 such right terminated upon the expiration of five years from the time the fund of $710.05, the property of Charles Roth mentioned in the petition, was paid by the sheriff of Auglaize county into the county treasury of Auglaize county, Ohio.

As shown by the allegations of the petition the fund was left in the hands of the then sheriff of Auglaize county, Ohio, on or about the 20th day of May, 1913, in case No. 8529 in the Court of Common Pleas of Auglaize county, Ohio, and, according to the presumption that a public officer has performed his duty in accordance with law, was presumptively paid by the sheriff to the treasurer of the county, in accordance with the provisions of Sections 3041 and 3042, General Code, upon the expiration of thirty days from and after the second Monday of January of the year 1914, being the year succeeding the year in which such fund was left with the sheriff.

This action in mandamus was filed January 14, 1936, more than twenty-one years after such fund was presumptively paid to the treasurer of the county.

The pertinent parts of Sections 3042, 3043 and 286, General Code, are as follows:

Section 3042. "All such advertised moneys, fees, costs, debts and damages, remaining in the hands of such clerk or probate judge, and all unclaimed moneys, other than costs, remaining in the hands of the sheriff from expiration of thirty days from the ending of such time of advertisement, shall be, by such officer, or successor of either, paid to the treasurer of the county, on the order of the county auditor, indicating in each item in his cash book and docket the disposition made thereof. Upon ceasing to be such officer, each clerk, probate judge, and sheriff immediately shall pay to his successor all money in his hands as such officer."

Section 3043. "A person entitled to money so turned into the treasury, upon demand, shall receive a warrant therefor from the auditor, payable to the order of the person named in the list furnished the auditor as hereafter provided, upon the certificate of the clerk, probate judge, or sheriff, in office at the time demand is made."

Section 286. "The term 'public money' as used herein shall include all money received or collected under color of office, whether in accordance with or under authority of any law, ordinance or order, or otherwise, and all public officials, shall be liable therefor. All money received under color of office and not otherwise paid out according to law, shall be due to the political subdivision or taxing district with which the officer is connected and shall be by him paid into the treasury thereof to the credit of a trust fund, there to be retained until claimed by the lawful owner; if not claimed within a period of five years after having been so credited to said special trust fund, such money shall revert to the general fund of the political subdivision where collected."

Sections 3040, 3041, 3042 and 3043, General Code, have been in effect for many years, covering the entire period mentioned in the petition, while all that part

of Section 286, General Code, above quoted, following the definition of the term "public money," is comprised in an amendment to original Section 286, General Code, which was approved by the Governor and filed in the office of the Secretary of State January 29, 1920.

It is a well established principle of statutory construction that a Legislature in the enactment of a law is presumed to have had in mind existing laws.

The language of Section 286, as amended, is sufficiently broad to include unclaimed moneys left in the hands of a sheriff, which, in turn, were by him paid to the treasurer of a county in compliance with the provisions of Section 3042, such moneys being "received or collected under color of office" within the meaning of that expression as used in Section 286, as amended. Statutes should be so harmonized as to give effect to all provisions of law. Giving effect to these rules of construction it is obvious that although under the provisions of Sections 3040, 3041, 3042 and 3043 there is no time limit placed on the right of a person entitled to unclaimed moneys paid by the sheriff to the county treasurer, to demand and receive a warrant therefor from the auditor, upon the certificate of the sheriff, the amendment to Section 286 operates as a limitation upon the time when such money may be paid out of the county treasury by warrant of the auditor on the certificate of the sheriff.

The amendment of Section 286 operated in law as an amendment of Section 3040 *et seq.* *State, ex rel. Bd. of Education of City School Dist. of City of Cincinnati,* v. *Ach,* 113 Ohio St., 482, 149 N. E., 405, at page 485.

Charles Roth, at the time the amendment took effect, had, in addition to the right to receive a warrant therefor from the auditor on the certificate of the sheriff, the right to enforce a continuing and existing trust in

such fund, and this right was an existing cause of action within the meaning of Section 26, which, under the provisions of Section 26, was not affected by the provisions of the amendment to Section 286, as there was no provision in Section 286 expressly affecting the cause of action. Such right as he had to maintain an action in mandamus against the sheriff to compel the issuance of a certificate and against the auditor to compel the issuance of a warrant thereon was not reserved to him by the provisions of Section 26, as the duty to be enforced was one owing to an individual, and a demand for performance at a time when the officer upon whom the demand is made owes a duty to perform was necessary in order to constitute a cause of action in mandamus. 25 Ohio Jurisprudence, 1002. Such demand was not made, and consequently no cause of action for mandamus existed prior to the taking effect of the amendment to Section 286, and his right and the right of his administrator to mandamus are therefore subject to the provisions of Section 286.

Upon the taking effect of the amendment to Section 286 it therefore became the duty of the county treasurer to pay into the county treasury to the credit of a trust fund the unclaimed funds in controversy, which, as hereinbefore stated, had been presumptively in the custody of the county treasurer since 1914, to be retained in the treasury until claimed by the lawful owner, subject to the further condition that if not claimed within the period of five years after having been so credited to such special trust fund such money should revert to the general fund of the political subdivision where collected, and this duty will be presumed to have been performed by the county treasurer.

The unclaimed moneys, therefore, were presumptively paid into the county treasury to the credit of the trust fund, by the county treasurer, in the year 1920, after the taking effect of the amendment to Section 286,

and the time in which the fund could be paid to the person entitled thereto by warrant of the auditor on certificate of the sheriff terminated on the expiration of five years from and after the fund was credited to the trust fund in the county treasury, the time of termination being in the year 1925; and upon the reversion of the fund to the general fund of the county in 1925 it could only be paid out upon appropriation by the county commissioners; and in effect the jurisdiction over the fund was changed from the sheriff, auditor and treasurer to the county commissioners, auditor and treasurer. Consequently, at the time this action was brought in 1936, the sheriff in office was without authority, and therefore under no duty, to issue the certificate provided for in Section 3043, General Code, and the auditor was without authority and therefore under no duty to issue his warrant therefor upon the certificate of the sheriff. The first ground of the demurrer was therefore well taken and the demurrer will be sustained on this ground.

However, as the case was not finally submitted on the demurrer, and the relator has the right to amend his pleading and make new parties if he desires, we deem it advisable to consider the present legal status of the unclaimed fund and the second ground of the demurrer.

Under the provisions of Section 19, Article I of the Constitution of Ohio, private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner in money; and in all other cases, where private property shall be taken for public use, a compensation therefore shall first be made in money or first secured by deposit of money.

Considering the provisions of Section 286, General Code, that if not claimed within a period of five years after having been so credited to the special trust fund such money shall revert to the general fund of the political subdivision where collected, in the light of this constitutional provision, it is clear that the Legislature in enacting this provision did not have the power, and will therefore be presumed not to have had the legislative intent, to take for public use, without compensation, unclaimed moneys privately owned, and the effect of this provision is not to deprive an owner of his property, but to terminate the right of the auditor to issue a warrant therefor to the owner on the certificate of the sheriff, and to determine the particular fund of the political subdivision in which it shall thenceforth be held.

Giving this effect to such provision of Section 286, the unclaimed moneys of Charles Roth, notwithstanding they have been transferred to the general fund of the county, remain property of his estate subject to administration by the relator administrator, and are held by the county in the same manner as originally held, as a continuing and subsisting trust subject to the right of his administrator to demand and receive the same, without limitation as to the time when such demand shall be made and such fund received.

On the second ground of demurrer the respondents contend, first, that the relator has an adequate remedy at law; and, second, that there is no duty specially enjoined upon the respondents with reference to the subject-matter of the action, the performance of which will be compelled by mandamus.

We will consider these contentions in the order mentioned.

To exclude resort to mandamus on the ground that the relator has another remedy, such remedy must be one that affords relief with reference to the matter in

controversy, and is appropriate to the particular circumstances of the case. "It must be available and effective, as well as full and complete." 25 Ohio Jurisprudence, 1012.

"When a suit in mandamus seeks to require a public officer to perform the duty imposed upon him by law, the relator has no adequate remedy at law, unless a legal remedy other than mandamus will compel the officer to perform, in effect, the specific act which the law enjoins." 25 Ohio Jurisprudence, 1013.

"Mandamus is generally recognized as the appropriate remedy to compel the payment by the proper officials, of liquidated and undisputed claims, which it is their duty to discharge." 25 Ohio Jurisprudence, 1060.

Under the allegations of the petition the claim of the relator is liquidated and its validity and amount are matters of public record.

While the relator would undoubtedly have the right to maintain an action against the county commissioners on the claim for the enforcement of a continuing and subsisting trust in the fund, such action under the provisions of Section 11236, General Code, being expressly exempted from the operation of the statutes of limitation contained in Chapter 2 of Division I, of Title IV of the General Code (Sections 11218 to 11235), and the provisions of Section 2408 of the General Code with reference to the liability of county commissioners not being exclusive, but being cumulative to the liability of the commissioners at common law and in equity, such remedy would not be full, complete or adequate as compared with the remedy in mandamus; for the reason that the relief in such action would be limited to a judgment for money and such judgment would not in itself compel the payment of the amount held by the county, and the relator might have to resort to mandamus to compel such payment after judgment.

The relator, therefore, has no other remedy avail-

able and effective, as well as full and complete, which will exclude resort to mandamus, and therefore the first contention under the second ground of the demurrer is without merit.

We next have reference to the second contention of the respondents on the second ground of the demurrer. Mandamus, as defined in Section 12283, General Code, is "a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."

The Constitution of 1851 conferred original jurisdiction in mandamus on the Supreme Court, and subsequently on the Circuit Court, and like jurisdiction was conferred on the Court of Common Pleas by statute.

Under the provisions of Section 6 of Article IV of the Constitution adopted September 3, 1912, original jurisdiction in mandamus is conferred on the Courts of Appeals.

In the opinion in the case of *State, ex rel. Moyer*, v. *Baldwin*, 77 Ohio St., 532, 83 N. E., 907, 19 L. R. A. (N. S.), 49, at pages 538 and 539, the court considered the remedy of mandamus as it then existed under the Constitution and laws of Ohio, and the reasoning of the court and the conclusions reached by it are all applicable to the remedy as it now exists under the amended Constitution and the law. The reasoning and conclusion are as follows:

"The jurisdiction in mandamus that is conferred by the Constitution is the common-law jurisdiction as it then was exercised in this state, and it is not in the power of the Legislature either to add to or take from it. The provisions of the statutes must be regarded as merely regulating the practice. They remain substantially as they were in the Code of Civil Procedure of 1853. * * *

"The statutory definition does not define the act as

one enjoined by statute but as one enjoined by law. The definition appears to have been compounded from the 14th section of the act of 1835 and from Blackstone. Attention to Blackstone's definition, and to the cases, will discover that the act which the writ directs to be performed, is one that the courts determine it is the duty of the respondent to do because it appertains to his office, trust, or station; and it is specially enjoined by law when it is so determined.

"The purpose in defining mandamus was not to limit the jurisdiction, but merely to describe the writ, and it is still necessary to recur to the cases to learn the occasions when it may issue."

The action was an action in mandamus to restore a party to the possession of an office from which he had been illegally removed. It was directly contended that the relator did not have a remedy in mandamus because there was no statutory provision specially enjoining the respondent as a duty resulting from his office, the performance of the act of withdrawing his certificate of removal; and that part of the opinion above quoted is part of the *ratio decidendi* of the case although not carried into the syllabus. The rule announced has never been overruled or distinguished, and it establishes that the act which the writ directs to be performed is one that the courts determine it is the duty of the respondent to do because it appertains to his office, station or trust; and it is specially enjoined by law when it is so determined.

Under the facts pleaded in the petition, although the unclaimed moneys have under the provisions of Section 286, General Code, reverted to the general fund of the county, the amount which relator claims is liquidated and undisputed, his title to the same is clear, and his right to demand and receive same is unlimited as to time, and while there are no express provisions of statutes requiring any particular county official or of-

ficials to perform any certain duties with reference to the payment or delivery of such fund to him it is the duty under the law of the various county officials in the performance of the general duties of their respective offices to take such steps as may be necessary to provide funds by taxation or otherwise out of which such payment may be made; to appropriate the same for such purpose, draw a warrant for the payment thereof, and pay such warrant, and under the decision in the case of *State* v. *Baldwin, supra,* the duty of each official with reference thereto is a duty specially enjoined by law, the performance of which may be compelled by mandamus in a case in which the proper officials are made parties defendant.

Such a case, however, is not presented by the petition in the case at bar. Only the sheriff and auditor are parties defendant, and the writ prayed for is a writ commanding the sheriff to issue a certificate to the relator under the provisions of Section 3043, and commanding the auditor to issue his warrant on such certificate.

As the money in controversy, under the provisions of Section 286 of the General Code, has reverted to the general fund of the county, the sheriff, for the reasons hereinbefore mentioned, is without authority and therefore under no duty to issue a certificate therefor; and the auditor is also without authority, and therefore under no duty to issue a warrant therefor on the certificate of the sheriff, and consequently the second contention as to the second ground of demurrer is well taken, and the demurrer will be sustained on this ground.

For the reasons mentioned the demurrer will be sustained on both grounds mentioned therein, and the relator will be given leave to make new parties, and fur-

ther plead within ten days from the announcement of this decision.

*Demurrer sustained.*

CROW, J., concurs.

KLINGER, P. J., concurs in sustaining demurrer, but dissents from the opinion that relief can be had by mandamus.

KLINGER, P. J. I concur with the majority opinion that the demurrer was well taken. However, as to the right to compel the public officials to act as suggested, by mandamus, and to pay the money to relator, I do not agree with the majority opinion.

I believe the claim of the relator is a simple claim for money had and received, and unless relator can recover in a suit against the county for money had and received the claim cannot be collected.