THE STATE, EX REL. CORRON ET AL., *v.* WISNER ET AL.

(No. 743—Decided April 28, 1970.)

Mr. *Carl W. Hinton*, Mr. *John C. Sausser* and *Mr.* *David A. Hackenberg*, for relators.

Mr. *Richard J. Rinebolt*, prosecuting attorney, for respondents.

TROOP, P. J. This cause was assigned for hearing on the application of relators for an alternative writ of mandamus and for an injunction *pendente lite*. Following a hearing on April 1, 1970, at Lima, Ohio, at which testimony was heard, the cause was submitted for decision upon the pleadings, the evidence, including exhibits, and the oral arguments of counsel.

Relators say that they represent several classes of taxpayers in Hancock County, specifically, "agricultural and commercial," "agricultural," and "residential." They further allege that one of the respondents, Carl J. Wisner, Auditor of the county, certified the 1969 abstract of real estate taxable values to the Board of Tax Appeals saying that the Board of Revision had completed its revision of 1969 taxable values on December 16, 1969. Further, relators say, that Wisner caused an entry to be spread on the minutes of the Board of Revision dated December 14, 1969, saying that the board had met and approved the 1969 assessed values as shown. The certification and the minutes, relators say, "are fictitious and false," and they also assert that the "entire 1969 real estate tax abstract is false

and a fraud" on the relators and taxpayers similarly situated.

The petition of relators goes on to say that "many errors in value and many items of discrimination" came before the board in the hearings on 2,600 complaints for the year 1968, and that the board was under a statutory duty to "revise and correct" the assessed valuation of each parcel and each class. Relators urge that "each member of each class of property owners have been damaged" by the neglect of the officers, respondents in the cause.

Relators ask for a final writ ordering a "complete revision" of the classes of property noted. They seek an alternative writ requiring the respondents to show cause why the final writ should not issue, and, also, relators seek an order restraining the collection of "illegal taxes," and the enforcing of penalties, until a "proper and legal tax duplicate" can be prepared as provided by law.

The issuance of the alternative writ and the injunction are the matters with which this decision is concerned. Attention is directed first to the possible use of mandamus in this case. If mandamus is appropriate and a final writ can issue, then, too, whether an alternative writ will lie. Consideration of either, or both, requires attention to fundamental rules. The textwriters set out the rules correctly as to the two phases of the problem presented, (1) the presence of the "fake and fraud" in the acts of respondents, and (2) the possibility of an adequate remedy at law. 35 Ohio Jurisprudence 2d 271, Section 25, puts the proposition concerning fraud as follows:

"If the case is otherwise proper, it is well settled that a writ of mandamus may issue to correct an abuse, or at least a gross abuse, of discretion, or action which is arbitrary, tyrannical, or unreasonable. The remedy is also available where the transaction is tainted with fraud."

And, at page 272, Section 26, the text reads as follows:
"* * * writ of mandamus must not be issued when there is a plain and adequate remedy in the ordinary course of the law. * * *"

Two essentials are necessary before a writ of mandamus will issue in a case such as this. Relators must show

"clear right to have the particular act performed," and there must be an "absence of a plain and adequate remedy in the ordinary course of the law."

Scholars spend some time discussing the academic question as to the distinguishing elements of fraud necessary to an action at law and one in equity and usually conclude that there is no essential difference. At least one Ohio case holds that an action in mandamus is regarded as an action at law under R. C. 2731.01 and 2731.05 and predecessor sections of the General Code. (*Fischer* v. *Damm* [1930], 36 Ohio App. 515.)

There are a host of definitions for "fraud," "deceit" being essentially synonymous. Certainly fraud is conduct substantially more immoral, or unethical, than negligence. It is "conduct that operates prejudicially on the rights of others and is so intended." Those "operating with a furtive design," serving a self-interest, or having an ulterior motive, demonstrate fraud. Characterization of such conduct commonly suggested is that the act was done "intentionally, and deliberately, with a wicked motive." (See 37 American Jurisprudence 2d 17, Section 1.)

Many Ohio cases raise the question of fraud in the conduct of public officers, but a case which deals solely with the "taint of fraud" problem is indeed rare. Most commonly, the question of fraud is associated with consideration of possible abuse of discretion. Two Ohio cases are fairly direct in the rules advanced. *State, ex rel. Insurance Co.,* v. *Moore* (1884), 42 Ohio St. 103, deals with the issuance to an insurance company of an Ohio license. A writ of mandamus refused. The court said that if the Superintendent of Insurance acted "in good faith," and the facts justified the conclusion that admission would prove a menace to our society, he was called upon to refuse the license (page 107). The refusal involved official judgment, the court said, pointing out that mandamus would lie only if a "plain and specific public duty positively required by law, ministerial in its nature, calling for the use of no discretion" were the situation. Paragraph three of the syllabus generalizes, as follows:

"When such officer, in determining upon the perform-

ance of a public duty, is called upon to use official judgment and discretion, his exercise of them, in the absence of fraud, bad faith, and abuse of discretion, will not be controlled or directed by mandamus."

The other Ohio case, involving public duties, *State, ex Little,* v. *Selby* (1924), 2 Ohio Law Abs. 360, says that trustees of a police pension fund cannot be controlled by mandamus "in the absence of bad faith, fraud, collusion or a clear abuse of discretion."

Three witnesses were called to testify at the hearing noted. They were the members of the Hancock County Board of Revision. Each of the men, Carl J. Wisner, County Auditor and secretary of the board, Glen J. Huffman, a farmer and Chairman of the Board of County Commissioners, and George B. Stout, chairman of the board and Treasurer of the county, answered every question directed to them forthrightly and in all candor.

It seems established that the Board of Revision did meet to hear some 2,600 complaints by taxpayers as to property valuations and that actions taken were reflected in the minutes of the board. Failure to formally sign the minutes was admitted by Mr. Wisner and Mr. Stout. Mr. Huffman admitted he never saw the formal minutes. There was no formal meeting to approve the certification of the 1969 abstract sent to the Board of Tax Appeals, although the certificate so recited. There appears to have been an "informal" agreement by the board to permit the auditor to adjust valuations as to woodlands and forest lands to $100 and $50 per acre upon complaint as to higher valuations.

Each man examined admitted carrying on the work of the board "informally" on the basis of "understanding" and precedent. Some acts of the board might be described as perfunctory, as was the attaching of signatures to documents.

It was also admitted by Mr. Wisner that required advertising advising of the finishing of the work of the Board of Revision and of the filing of the "abstract" of 1969 valuations was never accomplished. Respondents' Exhibit I is the file copy of the ad which never reached the news-

paper. Oversight was the explanation offered in a most apologetic manner.

Assume the omission of a statutory duty, or the presence of the perfunctory in certain acts of the officers and members of the board, or perhaps inadvertence in the completion of a prescribed act, are such in and of themselves "fraud"? No witness could have answered questions more directly than did Wisner, Huffman, and Stout. Admissions of fault were freely made, without any attempt to evade or obscure the truth.

We believe, and so hold, that no one of the respondents in this cause had any intention to act prejudicially, or was given to furtive design, to further a self-interest or because of an ulterior or wicked motive.

The Supreme Court dealt with a problem somewhat similar to the one here presented in *State, ex rel. Alcorn,* v. *Mittendorf et al., Commissioners* (1921), 102 Ohio St. 229. A statute required that a list of delinquent personal property taxpayers be "publicly read" before a set session of the county commissioners, which was not done. The court observed, at page 231, that:

"We are not concerned with the wisdom of a requirement of publicly reading the list, but will assume that the Legislature acted wisely * * *."

And, further, at page 232, the court said:

"In the case at bar it is clear that the commissioners had no purpose to serve in omitting to read the list, and there was no improper motive, but the statute is not to be construed upon a question of *animus.* * * *"

A writ of mandamus did issue in the case. The court concluded that time was not of the essence in such a case and that the time provision of the statute was merely directory. The act of reading, it was held, was mandatory and imperative, and so the writ issued directing that the list be read.

Ministerial acts required of public officials are mandatory and must be followed. It is not our present intention to condone the perfunctory, or the inadvertent, nor do we excuse indifference, slothfulness, or carelessness. Conformity to statutory direction is a must. If considera-

tion of this cause terminated at this point a writ of mandamus might be necessary as it was in *Mittendorf, supra.* It is not required, as the discussion following will indicate.

In the concluding portion of this review, we consider briefly whether there is before us a plain and specific duty to perform, an act ministerial in nature, or a duty calling for an exercise of discretion. If it is plain and specific, and ministerial in nature, mandamus is appropriate. If, however, discretion is involved, only abuse of discretion—some authorities say gross abuse—will justify a writ. And finally, we will raise the question as to a plain and adequate remedy in the ordinary course of the law.

A multitude of cases are available with decisions bearing upon the many facets of the use of an action in mandamus in an attempt to compel the performance of a public duty. Ministerial duties and discretion are considered, and frequently interwoven are the questions of gross abuse of discretion and the adequacy of a remedy at law. A few typical cases are suggested as reference. *State, ex rel. Price, Attorney General,* v. *Huwe* (1921), 103 Ohio St. 546; *State, ex rel. Phelps,* v. *Gearheart, Supt. of Ins.* (1922), 104 Ohio St. 422; *Brissel et al., County Commrs.,* v. *State, ex rel. McCammon* (1912), 87 Ohio St. 154; *State, ex rel. Hudson, Admr.,* v. *Kelley, Sheriff* (1936), 55 Ohio App. 314; *State, ex rel. Homan,* v. *Board of Embalmers & Funeral Directors of Ohio* (1939), 135 Ohio St. 321; *State, ex rel. Merydith Const. Co.,* v. *Dean, Aud.* (1916), 95 Ohio St. 108; and *State, ex rel.,* v. *Bergman, Clerk* (1930), 28 N. P. (N. S.) 131.

Three cases only are noted particularly. A plain ministerial act was involved in *State, ex rel. Paul Stutler, Inc.,* v. *Yacobucci, Clerk* (1958), 108 Ohio App. 41. The court, in *Paul Stutler, Inc.,* quoted from *State, ex rel. Howell,* v. *Schiele, Treas.* (1950), 153 Ohio St. 235, and relied upon it and other cases cited at pages 237 and 238 in that decision. *Howell* was a discretion case, and a writ was denied. The language of the Supreme Court, at page 237, is as follows:

"It is the established law of this state that a writ of mandamus will lie to compel the performance of an act

specially enjoined by law as a duty resulting from a public office, but will not issue to control discretion unless it be clearly shown that the refusal to act is an abuse of discretion. * * *''

And finally, an Eighth District Court of Appeals decision in *State, ex rel. Universal Destructor Co.,* v. *Wieggand, Mayor & Director of Public Works* (1927), 26 Ohio App. 154. Note particularly the syllabus of the case, setting forth the rules announced as follows:

''2. A writ of 'mandamus' is a remedy extraordinary, and can only be issued in cases of emergency, when there is no plain and adequate remedy at law, and relator, under the law and record, is clearly and plainly entitled to writ.''

''4. Mandamus will not lie to compel the exercise of a discretionary power unless the power is exercised flagrantly and with gross abuse of sound discretion.''

The duty of assessing real estate is clearly that of the county auditor. R. C. 5713.01 reads, in part, as follows:

''* * * The county auditor shall be the assessor of all the real estate in his county for purposes of taxation * * *.''

This duty is to be performed in accordance with the provisions in R. C. 5715.01 and 5713.03.

That there is a range of discretion for the auditor comes from a further provision in R. C. 5713.01 as follows:

''* * * The auditor shall revalue and assess at any time all or any part of the real estate in such county where he finds that the same has changed in value or is not on the tax list at its taxable value. * * *''

The section details his duty providing that he may increase or decrease the value of any ''lot or parcel'' so that it will be ''assessed at its taxable value''—''or he may increase or decrease the aggregate value of the real property'' ''so that every class of real property shall be listed and valued for taxation by an equal and uniform rule.''

It is provided also in the same section that the auditor may use such experts ''as will aid the auditor in fixing its taxable value.'' Whatever assistance the auditor may secure is immaterial, the duty of assessment for taxa-

tion is his duty alone. R. C. 5713.03 also provides that the county auditor shall determine "the taxable value of each separate tract, lot, or parcel of real property" and appurtenances thereto.

If the Board of Revision orally told the auditor to revalue woodlands and forest lands at $100 and $50 per acre, as Mr. Huffman said the board did, the members merely acquiesced in what the auditor has the statutory authority to do. Mr. Wisner testified that he adjusted those values to the uniform value noted for everyone who complained. Is it then *per se* an abuse of discretion not to adjust the values for the noncomplainers, as counsel for the relators contend? Mr. Wisner called attention to the enormity of the task of searching out those qualifying parcels. If his failure to accomplish uniformity be an abuse of discretion, it can hardly be called "gross" or "flagrant."

At least as to the Board of Revision, a complaint is absolutely necessary to accomplish a revision of value. R. C. 5715.13 reads as follows:

"The county board of revision shall not decrease any valuation complained of unless the party affected thereby or his agent makes and files with the board a written application therefor, verified by oath, showing the facts upon which it is claimed such decrease should be made."

If a written complaint is required to get consideration by the Board of Revision, it would not appear to be a "gross" or "flagrant" abuse of discretion for the auditor to wait for a complaint before exercising his discretionary power to adjust values.

In conclusion, we examine the question of an available and adequate remedy at law for these complaining relators, approximately 2,600 in number. Remedies are available to individual taxpayers aggrieved by improper valuations as well as to a group or class of taxpayers—such as the whole of the 2,600, or to each of the three classes alleged to be represented by the relators herein.

As to a single taxpayer, a complaint may be filed on or before the time within which the tax must be paid. R. C. 5715.19 reads:

"* * * Any taxpayer may file such a complaint as to the valuation or assessment of his own or another's real property * * *."

If the taxpayer complains of a discriminatory valuation he carries the burden of proof necessary to establish such claim. Any change resulting from the claim dates back to the day on which the tax became a lien. Further, it is provided that:

"* * * the treasurer may accept any amount tendered as taxes upon property concerning which a complaint is then pending, computed upon the claimed valuation as set forth in the complaint * * *."

And, if the tender is not accepted no penalty may attach.

It is difficult to see why a county treasurer should be enjoined from collecting taxes currently due when there is a complaint, because of the provision in R. C. 5715.21, which reads as follows:

"Payment of the whole or any part of any real property tax or assessment for any year as to which a complaint or appeal is pending shall not abate the complaint or appeal or in any way affect the hearing and determination thereof."

Still further, R. C. 5715.22 authorizes a credit to be applied to a tax bill of any tendered amount and, likewise, authorizes a refund of any overpayment.

Individual complainants, owners of a single lot or parcel, clearly have an adequate remedy at law. There is no testimony before this court as to how any single taxpayer has been damaged by any act of the respondents. Counsel for relators argue that protesters who talked to the auditor and received an adjustment of $50 to $100 per acre on woods and forest lands will pay less taxes than those who did not complain. As of the day of the hearing the tax books were still open, and they could still complain.

The only maladjustment in tax values brought to light at the hearing was as to owners of woodlands and forest lands, concerning whom counsel urged lack of uniformity—discrimination—in values. No other claimed disparities

were urged as to the three specific classes of properties, the owners of which relators claim to represent. Perhaps there are such disparities, in which case the owner of each lot or parcel has a remedy.

Relators prayer is significant. They ask for the "complete revision" of values "of the representative classes of property herein." That appears to suggest a "wholesale" undertaking in the hope of securing revision of values and avoiding individual adjustments by parcels and lots. It is noted that there are available procedures for such revision also.

R. C. 5715.01 says that a county auditor is the chief assessor in each county under R. C. 5713.03 and it provides also for the county board of revision to hear complaints, but it also establishes the position of control of the Board of Tax Appeals, as follows:

"The Board of Tax Appeals shall direct and supervise the assessment for taxation of all real property. * * *"

The broad supervisory powers of the Board of Tax Appeals in matters of tax valuation and assessment, and particularly as to equalization and uniformity, throughout the state and within a county, are well-established by a decision of the Supreme Court in *State, ex rel. Park Investment Co.,* v. *Board of Tax Appeals* (1964), 175 Ohio St. 410. The cause was an action in mandamus originating in the Supreme Court, and the court allowed the writ directing the Board of Tax Appeals "to perform its statutory duties by reviewing the tax assessments in Cuyahoga County." The further order, in full, is set out in the syllabus to the decision.

The syllabus in *Park Investment* is as follows:

"The Board of Tax Appeals has a statutory duty to review the tax assessments in any county in relation to whether such assessments were made by uniform rule and, if it finds that discrepancies exist in the tax assessments, as a whole or among the various classes of property, to direct such an order to the county auditor as is necessary to equalize such assessments."

Another writ was granted the same relator, directed to

the same respondent, in the similarly styled case in a decision (1968) reported in 16 Ohio St. 2d 85. The decision is predicated upon R. C. 5715.01 and 5715.24.

If the relators seek "complete revision," it must be accomplished through, and under the direction of, the Board of Tax Appeals.

Relators, as individual taxpayers, or as representatives of classes of property owners seeking relief en masse, "complete revision," have a plain and adequate remedy in the ordinary course of the law. R. C. 2731.05 provides as follows:

"The writ of mandamus must not be issued when there is a plain and adequate remedy in the ordinary course of the law."

We find no evidence of fraud on the part of the respondents. The basic duty, or duties, of respondents involved discretion, and there was no flagrant or gross abuse thereof. Any ministerial duty imposed, which was neglected, performed perfunctorily, or by inadvertence not performed, is without consequence in that the crucial point upon which the case turns is that relators have an adequate remedy at law by which adjustment of tax values may be accomplished, there being procedures available to them as individuals, or as classes or groups of taxpayers within the county.

Since the alternative writ will not issue there is no pending matter and, therefore, no basis for a temporary order restraining the collection of taxes.

Alternative writ in mandamus denied. Requested temporary injunction refused. Petition of the relators dismissed.

*Judgment accordingly.*

STRAUSBAUGH and STERN, JJ., concur.

TROOP, P. J., STRAUSBAUGH and STERN, JJ., of the Tenth Appellate District, sitting by designation in the Third Appellate District.