**CARVER, Appellant,**

v.

**DEERFIELD TOWNSHIP et al., Appellees.**

[Cited as *Carver v. Deerfield Twp.* (2000), 139 Ohio App.3d 64.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 99–P–0015.

Decided Oct. 2, 2000.

66

*Craig T. Conley,* for appellant.

*Victor V. Vigluicci,* Portage County Prosecuting Attorney, and *Kelli K. Norman,* Assistant Prosecuting Attorney, for appellees.

CHRISTLEY, Judge.

This case came from the Portage County Court of Common Pleas. Appellant, Jesse Carver, appeals the trial court's grant of summary judgment in favor of appellees, Deerfield Township, the Deerfield Township Board of Trustees, Deerfield Township trustees Michael Rach ("Rach") and John Girscht ("Girscht") (collectively referred to as "the Township"). On appeal, appellant argues that, contrary to the trial court's judgment, the Township did violate R.C. 121.22, Ohio's Sunshine Law.

Appellant further appeals the decision of the trial court denying his motion to vacate pursuant to Civ.R. 60(B). Finally, appellant appeals the trial court's decision granting the Township's motion to quash the deposition subpoena for the Township's counsel.

The following facts and procedural history are relevant to this case. The record shows that on February 14, 1997, the case of *Deerfield Twp. v. Lomaz*, Portage C.P. No. 87 CV 0596, was set for a mediation conference on April 10, 1997. Trustees Rach and Girscht attended this mediation conference. Although a third trustee, William Ernest, was informed of the mediation conference, he was unable to attend.

At the mediation conference, Rach and Girscht reached a settlement agreement with Lomaz, which was approved by the judge. Subsequently, on May 11, 1997, the board of trustees retroactively adopted the settlement agreement. An affidavit of the Clerk of Deerfield Township, Nancy Cowan, reveals that on May 11, 1997, at a regularly scheduled meeting, the board of trustees adopted the settlement agreement in accordance with R.C. 121.22.

Thereafter, on January 27, 1998, appellant filed a complaint against the Township, asserting that meetings were held by the trustees prior to and after the April 10, 1997 court-ordered mediation conference in violation of R.C. 121.22's open meeting requirement. As a result, appellant sought declaratory and injunctive relief and damages against the Township.

The record reveals that on March 25, 1998, the Township moved for summary judgment. Appellant failed to file a timely response to this motion. As a result, the trial court granted the Township's motion for summary judgment on April 14, 1998, in part and dismissed appellant's declaratory judgment and conspiracy claims for relief with respect to R.C. 121.22. However, the trial court denied the Township's motion for summary judgment as to the injunctive relief claim and gave the Township sixty days to adopt the settlement agreement in accordance with R.C. 121.22.

On May 11, 1998, appellant filed a notice of appeal from the trial court's April 14, 1998 partial summary judgment order. This court dismissed appellant's appeal for lack of a final appealable order on August 31, 1998.

On November 4, 1998, the trial court granted appellant's motion for reconsideration of the partial grant of summary judgment in favor of the Township but denied his motion to vacate the partial grant of summary judgment. Thus, appellant was granted leave to file a response to the Township's motion for summary judgment.

Further, on December 2, 1998, appellant attempted to issue a subpoena for the Township's counsel in an effort to take his deposition on December 4, 1998. In turn, the Township's counsel filed a motion to quash the subpoena, and this motion was granted by the trial court.

On December 14, 1998, appellant submitted his response to the Township's motion for summary judgment while the Township filed a supplement to their previous motion. Despite the trial court's grant of reconsideration and appellant's response to the motion for summary judgment, on January 27, 1999, the trial court granted the Township's motion for summary judgment on all of appellant's claims for relief. In so finding, the trial court stated that it was reaffirming the partial summary judgment granted in its prior decision.

In response, on February 24, 1999, appellant filed a motion to vacate this new grant of summary judgment in favor of the Township. Appellant also appealed the January 27, 1999 decision to this court and requested a remand to the trial court for adjudication of his motion to vacate. On April 19, 1999, this court remanded the case to the trial court, and on May 20, 1999, the trial court denied appellant's motion to vacate. As a result, appellant timely appeals the trial court's January 27, 1999 and May 20, 1999 decisions and asserts three assignments of error for our consideration:

"[1.] The trial court erred in failing to construe the evidence most strongly in favor of the nonmoving party (the Appellant), and in finding that there was no genuine issue of material fact[.]

"[2.] The Trial Court erred in its denial of Appellant's/Plaintiff's Motion To Vacate[.]

"[3.] The Trial Court erred in granting Murdock's Motion to Quash Subpoena[.]"

Before addressing the merits of appellant's first assignment of error, we will lay out the appropriate standard of review. In reviewing a trial court's entry of summary judgment, an appellate court employs the same Civ.R. 56(C) standard as the trial court. *Drawl v. Cornicelli* (1997), 124 Ohio App.3d 562, 566, 706

N.E.2d 849, 851. Accordingly, Civ.R. 56(C) sets forth the standard for granting a motion for summary judgment:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."

Under Ohio law, summary judgment is appropriate when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 268, 617 N.E.2d 1068, 1070–1071; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884.

A party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

Accordingly, the moving party must specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. *Id.* If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the burden to respond, by affidavit or as otherwise provided in the rule, so as to demonstrate that there is a genuine issue of fact. *Id.* However, if the nonmoving party fails to do so, then the trial court may enter summary judgment against that party. *Id.*

It is not the place for the trial court, in a summary judgment exercise, either to weigh the evidence before it or to accept one party's interpretation of that evidence *in toto*. *Hietanen v. Rentschler* (Dec. 17, 1999), Geauga App. No. 98–G–2187, unreported, at 14–15, 1999 WL 1313634; *Tesco Real Estate, Inc. v. K–Y Residential, Commercial & Indus. Dev. Corp.* (Feb. 17, 1995), Trumbull App. No. 94–T–5093, unreported, at 5, 1995 WL 89972. Instead, Civ.R. 56 requires that the evidence presented be construed most favorably for the nonmoving party, unless the evidence is so one-sided or so unreliable, that one party must prevail as a matter of law. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, 1126.

■ Further, in this summary judgment proceeding, once evidence has been produced by appellant that the Township violated R.C. 121.22's open-meeting requirement, the burden was on the Township to produce evidence that those meetings fell within an exception to the Sunshine Law.[1] *Springfield Local School Dist. Bd. of Edn. v. Ohio Assn. of Pub. School Emp. Local 530* (1995), 106 Ohio App.3d 855, 866, 667 N.E.2d 458, 465–466.

■ Under his first assignment of error, appellant points to various correspondences submitted with his response to the Township's summary judgment motion. He argues that these documents support his theory that the Township held improper meetings in violation of R.C. 121.22's open meeting requirement. Specifically, appellant contends that the letters submitted to the trial court refer to "previous meetings," "further meeting," and "further negotiations." Thus, they present a genuine issue of material fact as to whether the Township conducted meetings in violation of R.C. 121.22. These letters, appellant suggests, viewed most strongly in his favor as the nonmoving party, certainly could cause reasonable minds to come to more than one conclusion. The conclusion proposed by appellant is that these letters prove that meetings that violated the Sunshine Law "must have" taken place.

In general, R.C. 121.22 requires public officials to conduct meetings in public when the meetings concern official business. *TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision* (1998), 81 Ohio St.3d 58, 61, 689 N.E.2d 32, 34–35.

■ "[T]he Sunshine Law is not intended to prevent a majority of a board from being in the same room and answering questions or making statements *to other persons who are not public officials,* even if those statements relate to the public business. The Sunshine Law is instead intended to prohibit the majority of a board from meeting and discussing public business *with one another.*" (Emphasis *sic.*) *Holeski v. Lawrence* (1993), 85 Ohio App.3d 824, 830, 621 N.E.2d 802, 806.

In pertinent part, R.C. 121.22(C) provides that "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." R.C. 121.22(B)(2) defines "meeting" as "any prearranged discussion of the public business of the public body by a majority of its members." Furthermore, R.C. 121.22(H) states that "[a] resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body."

A review of the record shows that there was considerable evidence that implied that the Township participated in certain irregular meetings. As mentioned earlier, letters were introduced by appellant that referred to "previous meetings,"

---

1. These exceptions will be discussed in detail later in this opinion.

"further meeting," and "further negotiations." Included within these letters were proposed settlement terms from counsel for the Township. Thus, a genuine issue of material fact was created as to whether the Township conducted meetings that produced these settlement terms in violation of R.C. 121.22. At this point, the burden shifted to the Township to produce evidence that it fell within one of the enumerated exceptions to the Sunshine Law.

We note that although these letters fell outside the evidentiary submissions listed in Civ.R. 56(C), neither party objected to the admissibility of these letters in the summary judgment exercise. Ohio courts have recognized that when the opposing party "fails to object to the admissibility of evidence under Civ.R. 56, the court may, but need not, consider such evidence in determining whether summary judgment is appropriate." *Felker v. Schwenke* (1998), 129 Ohio App.3d 427, 431, 717 N.E.2d 1165, 1168; see, also, *State ex rel. Spencer v. E. Liverpool Planning Comm.* (1997), 80 Ohio St.3d 297, 301, 685 N.E.2d 1251, 1255, citing *Bowmer v. Dettelbach* (1996), 109 Ohio App.3d 680, 684, 672 N.E.2d 1081, 1084 (holding that "[w]hile the court of appeals may consider evidence other than that listed in Civ.R. 56[C] when there is no objection, it need not do so.").

Thus, upon considering all of the evidence and construing it most strongly in appellant's favor, we hold that a genuine issue of material fact existed as to whether meetings were held in violation of the Sunshine Law. With such an issue of material fact present on the face of the record, the trial court erred in granting summary judgment in favor of the Township. Based on the foregoing reasons, appellant's first assignment of error is well taken.

As for appellant's second claim in his first assignment of error, he does not dispute the propriety of the trustees' participation in the court-ordered mediation conference. It was only the meetings that preceded and followed that conference to which he now objects.

■ We agree that meetings that are specifically part of the mediation proceedings do not fall within the scope of the Sunshine Law. R.C. 2317.023(A)(1) defines "mediation" as:

" * * * a nonbinding process for the resolution of a dispute in which both of the following apply:

"(a) A person who is not a party to the dispute serves as mediator to assist the parties to the dispute in negotiating contested issues.

"(b) A court, administrative agency not-for-profit community mediation provider, or other public body appoints the mediator or refers the dispute to the mediator, or the parties, engage the mediator."

■ Mediation communication is held out as being confidential. R.C. 2317.023. In Ohio, it has been recognized that "the Sunshine Law does not apply to adjudications of disputes in quasi-judicial proceedings." *TBC Westlake* at 62, 689 N.E.2d at 36. A quasi-judicial proceeding is one that settles a "justiciable dispute requiring evaluation and resolution." *Id.*

A mediation proceeding may be viewed as a quasi-judicial proceeding because it seeks to resolve a dispute requiring evaluation and resolution. R.C. 2317.023. Therefore, a court-ordered mediation conference does not fall within the open meeting requirement of R.C. 121.22.

Appellant maintains, however, that there were mediation-related meetings that were not exempted. His claim is that there was no excuse for the trustees' failure to conduct a premediation open meeting under R.C. 121.22(C)[2] or, at a minimum, a premediation executive session under R.C. 121.22(G).[3] Appellant

---

2. R.C. 121.22(C) states:
   "All meetings of any public body are declared to be public meetings open to the public at all times. A member of a public body shall be present in person at a meeting open to the public to be considered present or to vote at the meeting and for purposes of determining whether a quorum is present at the meeting."

3. R.C. 121.22(G) enumerates the instances in which an executive session may be held rather than an open meeting. The statute provides the following:
   "(G) Except as provided in division (J) of this section, the members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of any of the following matters:
   "(1) To consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee, official, licensee, or regulated individual, unless the public employee, official, licensee, or regulated individual requests a public hearing. Except as otherwise provided by law, no public body shall hold an executive session for the discipline of an elected official for conduct related to the performance of the elected official's official duties or for the elected official's removal from office. If a public body holds an executive session pursuant to division (G)(1) of this section, the motion and vote to hold that executive session shall state which one or more of the approved purposes listed in division (G)(1) of this section are the purposes for which the executive session is to be held, but need not include the name of any person to be considered at the meeting.
   "(2) To consider the purchase of property for public purposes, or for the sale of property at competitive bidding, if premature disclosure of information would give an unfair competitive or bargaining advantage to a person whose personal, private interest is adverse to the general public interest. No member of a public body shall use division (G)(2) of this section as a subterfuge for providing covert information to prospective buyers or sellers. A purchase or sale of public property is void if the seller or buyer of the public property has received covert information from a member of a public body that has not been disclosed to the general public in sufficient time for other prospective buyers and sellers to prepare and submit offers.
   "If the minutes of the public body show that all meetings and deliberations of the public body have been conducted in compliance with this section, any instrument executed by the public body purporting to convey, lease, or otherwise dispose of any right, title, or interest in any public property shall be conclusively presumed to have been executed in compliance with

also finds fault with the trustees' failure to conduct a post-mediation open meeting under R.C. 121.22(C) before entering into the settlement agreement.

As previously mentioned, R.C. 121.22(B)(2) defines "meeting" as "any prearranged discussion of the public business of the public body by a majority of its members." In *Holeski*, the appellate court explained that "the logical interpretation of subsection (B)(2) is that no formal action is required, *per se*, in order to constitute a meeting. *The board must merely discuss the public business.* However, subsection (H) makes it clear that *in order to show a violation of the 'open meeting' rule as appellant attempts to do here, either a resolution, rule or formal action of some kind must have been adopted by the public body at a meeting not open to the public.* Thus, the logical inference stemming from section (H) is that any activity *not* qualifying as either a rule, resolution or formal action does not have to be adopted at an open meeting in order to be valid. Hence, public notice need only be given when formal action will take place." (Emphasis added.) *Id.* at 829, 621 N.E.2d at 805.

The Sunshine Law does provide for a few exceptions to the open meeting policy. The exceptions to the open meeting rule are listed in R.C. 121.22(D),[4]

---

this section insofar as title or other interest of any bona fide purchasers, lessees, or transferees of the property is concerned.

"(3) Conferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action;

"(4) Preparing for, conducting, or reviewing negotiations or bargaining sessions with public employees concerning their compensation or other terms and conditions of their employment;

"(5) Matters required to be kept confidential by federal law or regulations or state statutes;

"(6) Specialized details of security arrangements if disclosure of the matters discussed might reveal information that could be used for the purpose of committing, or avoiding prosecution for, a violation of the law;

"(7) In the case of a county hospital operated pursuant to Chapter 339. of the Revised Code, to consider trade secrets, as defined in section 1333.61 of the Revised Code.

"If a public body holds an executive session to consider any of the matters listed in divisions (G)(2) to (7) of this section, the motion and vote to hold that executive session shall state which one or more of the approved matters listed in those divisions are to be considered at the executive session.

"A public body specified in division (B)(1)(c) of this section shall not hold an executive session when meeting for the purposes specified in that division."

4. R.C. 121.22(D) states:

"This section does not apply to a grand jury, to an audit conference conducted by the auditor of state or independent certified public accountants with officials of the public office that is the subject of the audit, to the adult parole authority when its hearings are conducted at a correctional institution for the sole purpose of interviewing inmates to determine parole or pardon, to the organized crime investigations commission established under section 177.01 of the Revised Code, to the state medical board when determining whether to suspend a certificate without a prior hearing pursuant to division (G) of either section 4730.25 or 4731.22 of the Revised Code, to the board of nursing when determining whether to suspend a license without a prior hearing pursuant to division (B) of section 4723.181 of the Revised Code, or to the executive committee of the emergency response commission when determining

(E),[5] and (G). These sections enumerate instances where the members of a public body may hold a limited purpose executive session. As indicated earlier, R.C. 121.22(G) provides that the motion to hold an executive session must refer to one of the purposes stated in the division itself.

Arguably, R.C. 121.22(G)(3)[6] may apply to the instant case. Moreover, R.C. 121.22(H) provides in part that any resolution, rule, or formal action adopted by a public body following deliberation during an executive session is invalid unless the session was conducted in compliance with division (G).

Common sense need not be tossed out the window in determining whether or not there has been a violation. Certainly a meeting with legal counsel, which has as its purpose the framing of parameters within which a settlement can be negotiated, is a purpose that is not excepted from the scope of the Sunshine Laws. Such a meeting must originate through the auspices of an executive session as set out in R.C. 121.22(G)(3). Further, the Supreme Court of Ohio has recognized that " '[w]hile R.C. 121.22(G)(3) permits a governmental body to privately discuss litigation [in executive session], the statute expressly invalidates any resolution, rule or formal action adopted in the closed session unless the resolution, rule or formal action is adopted in an open meeting. See R.C. 121.22(H). Thus, once a conclusion is reached regarding pending or imminent litigation, the conclusion is to be made public, even though the deliberations leading to the conclusion were private.' " *State ex rel. Findlay Publishing Co. v.*

---

whether to issue an enforcement order or request that a civil action, civil penalty action, or criminal action be brought to enforce Chapter 3750. of the Revised Code."

**5.** R.C. 121.22(E) provides:

"The controlling board, the development financing advisory council, the industrial technology and enterprise advisory council, the tax credit authority, or the minority development financing advisory board, when meeting to consider granting assistance pursuant to Chapter 122. or 166. of the Revised Code, in order to protect the interest of the applicant or the possible investment of public funds, by unanimous vote of all board, council, or authority members present, may close the meeting during consideration of the following information confidentially received by the authority, council, or board from the applicant:

"(1) Marketing plans;
"(2) Specific business strategy;
"(3) Production techniques and trade secrets;
"(4) Financial projections;
"(5) Personal financial statements of the applicant or members of the applicant's immediate family, including, but not limited to, tax records or other similar information not open to public inspection.

"The vote by the authority, council, or board to accept or reject the application, as well as all proceedings of the authority, council, or board not subject to this division, shall be open to the public and governed by this section."

**6.** R.C. 121.22(G)(3) indicates that an executive session is the proper forum for "[c]onferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action[.]"

*Hancock Cty. Bd. of Commrs.* (1997), 80 Ohio St.3d 134, 138, 684 N.E.2d 1222, 1225–1226, quoting *State ex rel. Kinsley v. Berea Bd. of Edn.* (1990), 64 ·Ohio App.3d 659, 664, 582 N.E.2d 653, 656.

■ However, a meeting with legal counsel to advise the potential witnesses/board members as to their role as witnesses or participants in the mediation or litigation proceedings would seem to be outside the purpose and intent of the Sunshine Laws. In other words, classic trial preparation of a witness would be exempt as long as it did not involve making policy decisions, such as authorizing potential settlement possibilities.

Accordingly, because appellant did create a material issue of fact, on remand, he has the burden of proving, by a preponderance of the evidence, that the trustees held a meeting or meetings not open to the public wherein they discussed public policy or business and adopted a resolution, rule, or took formal action in violation of R.C. 121.22. *Holeski* at 829, 621 N.E.2d at 805–806; *Manogg v. Stickle* (Dec. 29, 1999), Licking App. No. 99CA56, unreported, at 3–4, 2000 WL 1483. If appellant is able to do this, then the Township, as the public body, has the burden of showing that an exception to an open meeting requirement is applicable. *Springfield* at 866, 667 N.E.2d at 465–466.

Turning to appellant's second assignment of error, he claims that it was error for the trial court to deny his motion to vacate its decision to grant the Township's motion for summary judgment. In light of our holding in the first assignment of error that the trial court improperly granted summary judgment in favor of the Township, appellant's second assignment of error is moot.

As for appellant's third assignment of error, he maintains that he was improperly denied the opportunity to depose a material fact witness when the trial court granted the Township's counsel motion to quash the subpoena.

Under Ohio procedural law, Civ.R. 45 governs the issuance, quashing, and modification of subpoenas. Specifically, Civ.R. 45(C)(3) states:

"On timely motion, the court from which the subpoena was issued shall quash or modify the subpoena or order appearance or production only under specified conditions, if the subpoena does any of the following:

" * * *

"(b) Requires disclosure of privileged or otherwise protected matter and no exception or waiver applies[.]"

■ It is well settled that the attorney-client privilege protects communications between an attorney and his or her client made for the purpose of obtaining legal advice. *State ex rel. Nix v. Cleveland* (1998), 83 Ohio St.3d 379, 383, 700

N.E.2d 12, 16; *TBC Westlake,* at 62–63, 689 N.E.2d 32; *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 249, 643 N.E.2d 126, 129–130.

■ " 'Where a person approaches an attorney with the view of retaining his services to act on the former's behalf, an attorney-client relationship is created, and communications made to such attorney during the preliminary conferences prior to the actual acceptance or rejection by the attorney of the employment are privileged communications.' " *Nix* at 383, 700 N.E.2d at 16, quoting *Taylor v. Sheldon* (1961), 172 Ohio St. 118, 15 O.O.2d 206, 173 N.E.2d 892, paragraph one of the syllabus.

■ The attorney-client privilege also covers communications between government clients and their attorneys pertaining to the attorney's legal advice. *Nix* at 383, 700 N.E.2d at 16. Appellant failed to offer a single cite to suggest otherwise.[7]

Moreover, in Ohio, the attorney-client privilege is codified in R.C. 2317.02, which provides:

"The following persons shall not testify in certain respects:

"(A) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client or, * * * if the client voluntarily testifies * * *, the attorney may be compelled to testify on the same subject[.]"

■ The two exceptions contained in R.C. 2317.02(A), express waiver and the client testifying about the privileged matter, are the only two methods by which the privilege may be waived. *State v. McDermott* (1995), 72 Ohio St.3d 570, 572, 651 N.E.2d 985, 987. In order to determine whether the privilege should apply, we must balance the public's interest in confidentiality against the need for discovery in the efficient administration of justice. *Henneman v. Toledo* (1988), 35 Ohio St.3d 241, 245–246, 520 N.E.2d 207, 211–212.

In the present case, a notice of deposition *dues tecum* requested that both Rach and Girscht appear at a deposition held by appellant for cross-examination and to bring certain documents with them as well. During the deposition, Rach stated that there "probably" were meetings between counsel for the Township and the trustees regarding the settlement proposal. Thus, the issue becomes whether Rach voluntarily testified regarding privileged matters, thereby waiving any protection provided by R.C. 2317.02(A).

---

7. The single cite in appellant's reply brief did not reference the attorney-client privilege.

Under the present circumstances, we cannot hold that a waiver of the attorney-client privilege occurred as a result of Rach's deposition testimony during cross-examination because Rach's testimony should not be viewed as voluntary. The portion of testimony in which Rach stated that there "probably" were meetings between counsel for the Township and the trustees regarding the settlement proposal occurred while Rach was being cross-examined by appellant's counsel. Cross-examination testimony is not voluntary, "as the client and his counsel do not have control of the questions or the information which is to be elicited." *Tandon v. Tandon* (Dec. 27, 1999), Jefferson App. No. 99 JE 36, unreported, at 3, 1999 WL 1279162.

Further, the client here is not any individual trustee but rather the board of trustees as a whole. The county prosecutor is counsel to the board, not any individual trustee. Therefore, the decision of an individual trustee to testify about what went on at a meeting does not waive the privilege of the board as a whole. *In re Dismissal of Osborn* (Aug. 20, 1992), Ashland App. No. CA–1009, unreported, at 2, 1992 WL 214527.

In the instant matter, the Township's counsel is protected under the attorney-client privilege because attorney-client communication between the counsel of the Township and its officials is confidential. Hence, the Township's counsel could not be compelled to disclose such privileged information in a deposition.

Accordingly, the trial court did not abuse its discretion when it granted the Township's counsel motion to quash the subpoena, and appellant's third assignment of error is not well taken.

Finally, we address the issue of whether appellant's action falls within a recognized exception to the mootness doctrine. Appellee maintains that because the condition precedent to the settlement agreement has failed, it rendered the settlement agreement ineffective and, thus, appellant's action is moot.

It is well established that courts cannot entertain jurisdiction over a moot question. *James A. Keller, Inc. v. Flaherty* (1991), 74 Ohio App.3d 788, 791, 600 N.E.2d 736, 738. However, we find that appellant's action is not moot for several reasons. First, the final claimed revocation of the settlement agreement by the Township was not in the record. Second, there was no court approval of the Township's action. Finally, an appellate court can review issues within an otherwise moot action when (1) the issue is capable of repetition but will always evade review and (2) the issue is of great public importance. *Keller* at 791–792, 600 N.E.2d at 738–739.

We are of the opinion that the issues in this case are capable of repetition and will continually evade review. Moreover, the issues surrounding the Sunshine Law litigation are of great public concern and importance.

Based on the foregoing analysis, appellant's first assignment of error has merit while his second assignment of error is moot. Appellant's third assignment of error is not well taken. Therefore, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

FORD, P.J., and WILLIAM M. O'NEILL, J., concur.