JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants Richard Salvatore, president of Brookpark City Council; Dennis Patten, Brian Mooney, Deborah Dowd, Mark Elliott, Scott Adams, Carl Burglo, and Russell Horner, council members; and David Lambros, city law director, appeal the trial court's ruling in favor of plaintiff-appellee Mayor Thomas Coyne on the issue of whether the city charter grants authority to the mayor or to the council to select special counsel for labor negotiations, and whether R.C. 4117 overrides any authority granted to the council.
 {¶ 2} "In this case, it is obvious that the court is being asked to resolve an intense power dispute between the legislature and the executive branch. Any judicial resolution of such a dispute has significant political implications in the struggles for dominance of, control of, or impact on a government." Dennis v. Luis (1984),741 F.2d 628, 632.
 {¶ 3} The following facts have been stipulated to by the parties. The City of Brookpark ("city") from 1981 until 2000 has, by agreement of council and the mayor, used the law firm of Duvin, Cahn Hutton as special counsel to advise the city on labor matters. In February of 2000, a union sought to organize some of the city workers. The council and the law director were opposed to voluntarily recognizing the union, which the mayor decided to accept.
 {¶ 4} In July 2000, city council attempted to terminate its employment of Duvin, Cahn Hutton as special counsel to the city by passing an ordinance to that effect. In its place, again by ordinance, the council tried to hire the firm of Johnson Angelo. The mayor vetoed both ordinances and the council subsequently overrode the mayor's vetoes.
 {¶ 5} The State Employment Relation Board ("SERB") held a hearing in August to address the union's petition to represent the city workers. At that hearing, the SERB referee "ruled that the Law Director should represent the City in future SERB hearings with respect to the Union's representation petition." Agreed Statement of the Case, at 2. Several days later, the council amended the city ordinances to state that the council could authorize temporary employment of special counsel for specific matters if the mayor or law director requested special counsel "to assist the Law Director in performing his duties pursuant to the Charter." The ordinance also stated that special counsel could not be employed on an open-ended basis.
 {¶ 6} At this point the mayor filed a "declaratory judgment action pursuant to R.C. Chapter 2721 seeking injunctive relief from alleged violations of the Ohio Revised Code and the City's Charter." Id. at 2-3.
 {¶ 7} The trial court ruled in favor of the mayor, stating that "Council has effectively usurped the Mayor's authority to execute * * * a contract for employment of co-counsel."[1] Opinion and order, journalized March 19, 2001. Council, its president and law director timely appealed. This court consolidated those appeals.
 {¶ 8} All but one of the parties' assignments of error will be reviewed collectively in view of the fact that they deal with the same issues. These assignments of error state:
 {¶ 9} "THE TRIAL COURT ERRED WHEN IT DECIDED THAT THE BROOK PARK COUNCIL DOES NOT HAVE THE POWER UNDER THE CITY CHARTER TO AWARD A CONTRACT OF EMPLOYMENT TO SPECIAL COUNSEL TO ASSIST THE LAW DIRECTOR IN SPECIALIZED LEGAL MATTERS." (Council's Brief)
 {¶ 10} "THE TRIAL COURT ERRED WHEN IT IGNORED THE INHERENT AUTHORITY OF MUNICIPAL HOME RULE, THE CITY CHARTER OF BROOK PARK, AND THE OHIO CONSTITUTION, ALL OF WHICH INTERRELATE TO ESTABLISH THE SOLE AUTHORITY OF CITY COUNCIL TO AWARD A CONTRACT FOR THE EMPLOYMENT OF SPECIAL COUNSEL TO ASSIST THE LAW DIRECTOR." (Law Director's Brief)
 {¶ 11} "WHERE THE CITY CHARTER PROVIDES FOR THE LEGISLATIVE BODY TO AWARD CONTRACTS THAT FACT THAT THE MAYOR EXECUTES THE CONTRACT DOES NOT CONFER THE POWER TO AWARD THEM." (Council President's Brief.)
 {¶ 12} "THE TRIAL COURT ERRED IN FINDING THAT THE BROOK PARK CHARTER GIVES THE MAYOR THE AUTHORITY TO DETERMINE WHO SHALL BE AWARDED A CONTRACT BY THE CITY OF BROOK PARK." (Council's brief)
 {¶ 13} "THE CITY CHARTER VESTS IN THE COUNCIL THE AUTHORITY TO AWARD AN EMPLOYMENT CONTRACT TO SPECIAL LEGAL COUNSEL TO SERVE ONLY WHEN THE LAW DIRECTOR IS UNABLE TO REPRESENT THE CITY." (Council president's brief)
 {¶ 14} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT MISAPPLIED O.R.C. SECTION 4117.10(C) TO USURP THE AUTHORITY AND OBLIGATION OF THE LAW DIRECTOR TO REPRESENT THE CITY IN ALL PROCEEDINGS IN COURT OR BEFORE ANY ADMINISTRATIVE BODY." (Law Director's brief)
 {¶ 15} "THE TRIAL COURT ERRED IN DETERMINING THAT O.R.C. SECTION 4117(C) [sic] AUTHORIZES THE MAYOR TO CONTRACT WITH AN OUTSIDE LAW FIRM TO REPRESENT HIM IN CONTRACT NEGOTIATIONS WITH BROOK PARK EMPLOYEES." (Council's brief)
 {¶ 16} Each of the parties is partially correct. The mayor alone is authorized to select his representative for negotiations with the union. The union negotiations are the exclusive domain of the executive branch, and council may only reject or deny the entire labor agreement after the mayor and the union agree on it.
 {¶ 17} Only the law director, on the other hand, is authorized to represent the city before S.E.R.B. Neither the mayor nor council is authorized to hire replacement counsel to represent the city in court or before any administrative board, including S.E.R.B. The charter does not, however, prevent special counsel from assisting the law director in his duties.
 {¶ 18} Finally, the mayor cannot make any expenditure for a contract without approval of council by way of its awarding the contract and appropriating the funds to pay for the contract. He cannot, therefore, unilaterally hire his chosen representative without the award of a contract and appropriation of funds by council. The reasons for this decision follow.
 {¶ 19} First we note that the Ohio Supreme Court has held that the parties have a "right to declaratory relief pertaining to the construction and validity of statutes and ordinances. * * * For a real controversy to exist * * *" it is necessary only for "a controversy `between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Burger Brewing v.Liquor Control Commission (1873), 34 Ohio St.2d 93, 96, citations omitted, emphasis omitted. In the case at bar, an interpretation of the city charter is necessary to determine whether the ordinances drafted by council pursuant to their understanding of the city charter are valid and to determine the proper roles of the parties under the charter.
 {¶ 20} Next we note that the mayor who initiated this action is no longer in office. The question presented, however, is not moot:
 {¶ 21} "it is well established that courts do not have jurisdiction to consider moot issues; rather, courts decide actual cases in controversy. Carver v. Twp. of Deerfield (2000), 139 Ohio App.3d 64, 77, 742 N.E.2d 1182. However, a court is vested with jurisdiction to address moot issues when such issues are capable of repetition, yet evade review. State ex rel. Plain Dealer Publishing Co. v. Barnes (1988), 38 Ohio St.3d 165, 527 N.E.2d 807, paragraph one of the syllabus. A court is also vested with jurisdiction to address moot issues when those issues concern an important public right or a matter of great public or general interest. In re Suspension of Huffer from Circleville High School (1989), 47 Ohio St.3d 12, 14, 546 N.E.2d 1308. Similarly, an appellate court is vested with jurisdiction to review moot issues provided such exceptions apply. Franchise Developers, Inc. v. Cincinnati (1987), 30 Ohio St.3d 28, 30, 505 N.E.2d 966."
 {¶ 22} Clearly, the issue before us concerns a matter of public interest for the citizens of the city of Brook Park, and is capable of repetition. Deluca v. Aurora (2001), 144 Ohio App.3d 501, 508.
 {¶ 23} Resolution of the questions raised by the parties requires us to examine the actual Brook Park city charter, the role of home rule under the Ohio Constitution, the relationship of R.C. 4117 to home rule, and the relationship of the provisions of the Revised Code concerning municipalities to the city charter in question.
 A. BROOK PARK CITY CHARTER {¶ 24} None of the parties provided the court with a complete copy of the city charter until after the oral argument, despite the mayor's brief, which states that "the best way to fathom the meaning [of certain clauses] is to read the rest of the Charter regarding the Appellee Mayor's contracting authority and to see how, over history, the parties have interpreted those rather clear-cut provisions."[2] We note that the trial court did not have the benefit of a complete copy of the charter when it made its decision in this case. Nonetheless, we did review the entire charter. The parties agreed at oral argument to stipulate to the accuracy of the copy of the charter provided and to its use in this ruling.
 {¶ 25} The pertinent portions of the city charter concerning the duties and powers of the mayor are addressed in section 3.03, which states:
 {¶ 26} "The Mayor shall be the chief executive officer of the City. He shall supervise the administration of the City's affairs, and shall exercise control over all departments and divisions. He shall be the chief conservator of the peace within the City and shall see that all laws and ordinances are enforced therein. He shall be responsible for the preparation and submission of the annual estimate of receipts and expenditures and appropriation measures, and shall at all times keep the Council fully advised as to the financial condition and needs of the City. he shall recommend to the Council such measures as he deems necessary or expedient. He shall see that all terms and conditions imposed in favor of the City or its inhabitants in any contract to which the City is a party are faithfully kept and performed." (Emphasis added.)
 {¶ 27} Further, "[u]nless otherwise provided for in this Charter, the Mayor shall execute on behalf of the City all contracts,
conveyances, evidences of indebtedness, and all other instruments towhich the City is a party." (Emphasis added.)
 {¶ 28} The pertinent portions of the charter addressing the duties and powers of council include section 4.01, which states:
 {¶ 29} "All legislative powers of the City, except as otherwise provided by this Charter and by the Constitution and general laws of the State of Ohio, shall be vested in * * * Council * * *."
 {¶ 30} Additionally, section 4.08 mandates that:
 {¶ 31} "[a]ll legislative action by Council shall be by ordinance or resolution introduced in written or printed form, except when otherwise required by the Constitution or the laws of the State of Ohio." (Emphasis added.)
 {¶ 32} The duties and powers of council addressing city contracts are found in part in section 4.10, which states:
 {¶ 33} "The Council shall make provisions by Ordinance for
 {¶ 34} * * * (b) the advertising and awarding of contracts or alterations or modification of contracts."
 {¶ 35} The pertinent charter provisions addressing the law director, his department, duties and responsibilities are found in part in section 5.01, which states:
 {¶ 36} "A Department of Law * * * [is] hereby established. The Council shall by ordinance determine the organization and duties of [the] department * * * and the duties of each officer * * *, except as otherwise provided by this Charter." (Emphasis added.)
 {¶ 37} The law director also qualifies as the head of the law department, as stated in section 5.02:
 {¶ 38} "The head of each department * * * shall be a director."
 {¶ 39} Further, the law director is not appointed by mayor or council. He is chosen by the citizens, as noted in section 6.01:
 {¶ 40} "The Director of Law shall be elected at the regular municipal election * * *."
 {¶ 41} His duties are delineated in section 6.02:
 {¶ 42} "The Director of Law shall serve the Mayor, the Council, the Administrative Officers in the Departments, and the Commissions and Boards of the City as Legal Counsel, and shall represent the City in all proceedings in Court or before any administrative body. * * *. He shall perform all other duties now or hereafter imposed upon city solicitors by the general laws of Ohio, unless, otherwise provided by ordinance or resolution of council, and he shall perform such other duties as may be required by this Charter and/or as the Council or the Mayor may impose upon him consistent with his office.
 {¶ 43} The Director of Law may appoint such assistant director or directors of law as he may deem necessary. Such assistants of law shall serve at the pleasure of the Director of Law * * *." (Emphasis added.)
 {¶ 44} Finally, the payment of contracts for the city is controlled by council, as is seen in the portions of the charter concerning finances and appropriations, section 7.05, which states:
 {¶ 45} "The general laws of the State of Ohio relating generally to budgets, appropriations, deposits, expenditures, debts, bonds, contracts and other fiscal matters of municipalities shall be applicable to the City, except as modified or inconsistent with the provisions of this Charter.
 {¶ 46} "* * *
 {¶ 47} "(c) The Director of Finance shall furnish to the Council an appropriation ordinance, making appropriations for the expenditures of the City during the year covered by the * * * annual estimate. The Council shall adopt such ordinance in its original form, or with such revision as it may find proper * * *.
 {¶ 48} "Such appropriation ordinance * * * may be amended or supplemented by the Council after its passage, but appropriations shall not be made in excess of the estimated revenues of the City.
 {¶ 49} "* * *
 {¶ 50} "(e) No money shall be drawn from the treasury nor shall any obligation for the expenditure of money be incurred, except pursuant to appropriations made by Council. No warrant for the payment of any claim shall be issued until such claim shall have been approved in writing by the head of the Department * * * for which the obligation was incurred.
 {¶ 51} "* * *
 {¶ 52} "(g) No contract, agreement, or other obligation involving the expenditure of money shall be entered into, nor shall any ordinance, resolution or order for the expenditure of money be passed or issued by the Council or authorized by any officer of the City unless the Director of Finance shall have first certified in writing to the Council, or to the proper officer, as the case may be, that the money required for such contract, agreement, obligation or expenditure, is to be drawn and not appropriated for any other purpose." (emphasis added.)
 {¶ 53} The parties focus their arguments on the dispute over the interpretation of the charter on the meaning of the words "execute" the contract versus "make provision to advertise and award" the contract. First we note that at the oral argument, the parties disputed the existence of a contract: the mayor stated that the city had a contract with Duvin, Cahn, while the law director denied the existence of a formal contract. Nonetheless, it is clear that the city had been paying Duvin, Cahn during its relationship with the city, so at least an oral contract existed. No evidence exists in the record, however, documenting the terms of the contract.
 {¶ 54} It is clear that any payment for the services of Duvin, Cahn would have to be pursuant to ordinance after the director of finance presented certification of sufficient funds for that purpose. There is no evidence in the record before us showing that council passed any such ordinance or that the finance director made any such certification.[3]
 {¶ 55} If, however, the proper procedures were followed in making this agreement with Duvin, Cahn, council was without authority to terminate the arrangement. Unfortunately, the charter is silent concerning the procedure for terminating a contract or appropriation. Council can, however, refuse to appropriate funds for a new contract with the firm and tell the mayor to choose another firm for his negotiations.Koach v. Westfall (1976), 48 Ohio St.3d 23. Although council has the authority and the duty to appropriate payments per the charter, neither the mayor nor anyone else can tell council what to put in the ordinance.Neelon v. Locher (1971), 25 Ohio St.2d 49, Syllabus paragraph one.
 {¶ 56} Council, its president, and the law director argue that because the Charter states that the council has the authority to award the contract, council has the responsibility for selecting the party with whom the city will contract. They argue that the term "execute" means merely that the mayor actually signs the contract with the party that council has selected.[4]
 {¶ 57} The mayor, on the other hand, argues that the term "execute" means that he selects the party with whom the city will contract, and that council merely goes through the formality of awarding the contract after he has negotiated it.[5]
 {¶ 58} Certainly there is a give and take implied in the wording of the charter, which provides either council or the mayor with the opportunity to defeat a contract with which council or the mayor disagrees. If the mayor is required to execute the contract in question, his refusal to sign the contract would defeat it. If the council is required to award the contract as a prerequisite to the contract, its refusal to award any contract signed by the mayor would invalidate it. Further, its refusal to appropriate the necessary funds for the contract would also invalidate it. Landco v. Cleveland (1992), Cuyahoga App. No. 60669, 1992 Ohio App. LEXIS 2750 (holding city could not be held to contract awarded by council but was not properly executed because city's representative's refused to sign it); McCormick v. Oklahoma City (1915),236 U.S. 657 (holding that contract not executed by mayor not binding);Cooney v. Independence (1994), Cuyahoga App. No. 66509, 1994 Ohio App. LEXIS 5290 ("municipalities may not be bound to a contract unless the agreement is formally ratified through proper channels."). The authority to contract is divided evenly between the mayor and council, and neither can contract without the cooperation of the other.
 {¶ 59} Some courts have held that if the council overrides the mayor's veto, the mayor must execute any contract awarded by council unless the contract violates a charter provision. Oregon v. Dansack
(1993), 68 Ohio St.3d 1; Waldick v. Williams (1995), 74 Ohio St.3d 192,195 (ordinance "clearly mandates" mayor to enter into contract with specific corporation; "The discretion accorded [mayor] by the ordinance was only as to other provisions of the contract, not the execution of the contract itself."). Because we do not have the actual charters being interpreted in those cases before us, we decline to apply their holding in the case at bar. Brook Park's city charter does not give either the mayor or council greater authority or power over the contents of contracts.
 {¶ 60} The resolution of these questions does not depend, however, upon the terms of the city charter alone. Although the city charter prevails over state law in most areas of municipal law, in some instances, the Ohio Constitution mandates that certain statutes prevail over home rule. In order to understand the concept of home rule, it is necessary to consider the pertinent sections of the Ohio Constitution.
 B. HOME RULE: THE OHIO CONSTITUTION {¶ 61} The Ohio Constitution Article XVIII section 3 states
 {¶ 62} "Municipalities shall have the authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."
 {¶ 63} This provision has been interpreted by the courts as allowing the municipality's charter to prevail over the city's ordinances as well as the state statutes, except for those statutes that address certain police powers. The Ohio Supreme Court best explained home rule as mandated by the Ohio Constitution:
 {¶ 64} "Section 7 of Article XVIII of the Constitution of Ohio provides, that `[a]ny municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government.' Section 3 of Article XVIII empowers municipalities "[t]o exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.
 {¶ 65} "* * *"
 {¶ 66} In Froelich v. Cleveland (1919), 99 Ohio St. 376,124 N.E. 212, this court was called upon to discuss municipal authority under the newly adopted Home Rule amendments to the Ohio Constitution. As stated at pages 390 and 391:
 {¶ 67} "Section 7 of the home-rule amendment confers power on the municipality to frame and adopt a charter for its government, and to exercise thereunder all powers of local self-government as provided by Section 3. That is, the people of the municipality are given power to construct the machinery of their own local government and to operate it themselves. * * *
 {¶ 68} "A charter is not power. It is the symbol of power. It provides the means and the methods to exercise powers. But it is useless unless the powers intended to be exercised are at hand.
 {¶ 69} "* * * The constitution authorizes the city to exercise part of the sovereign power, and in the proper exercise of that part it is immune from general laws."
 {¶ 70} A charter municipality's authority under Section 3 of Article XVIII of the Constitution of Ohio is not, however, unlimited. Under Section 3 of Article XVIII, the words "as are not in conflict with general laws" place a limitation upon the power to adopt "local police, sanitary and other similar regulations," but do not restrict the power to enact laws for "local self-government." State, ex rel. Canada, v.Phillips (1958), 168 Ohio St. 191, 151 N.E.2d 722 (paragraph four of the syllabus); State, ex rel. Petit, v. Wagner (1960), 170 Ohio St. 297,164 N.E.2d 574. Additionally, the powers granted under Section 3 of Article XVIII, are subject to other "restrictions or limitations contained in any other provision in the Constitution." State, ex rel.Gordon, v. Rhodes (1951), 156 Ohio St. 81, 88, 100 N.E.2d 225. Paragraph one of the syllabus in Bazell v. Cincinnati (1968), 13 Ohio St.2d 63,233 N.E.2d 864, certiorari denied, 391 U.S. 601, states:
 {¶ 71} "By reason of Sections 3 and 7 of Article XVIII of the Ohio Constitution, a charter city has all powers of local self-government except to the extent that those powers are taken from it or limited by other provisions of the Constitution or by statutory limitations on the powers of the municipality which the Constitution has authorized the General Assembly to impose." Dies v. Akron (1980), 62 Ohio St.2d 322, 324-325.
 {¶ 72} If the Ohio statutes concerning municipal governments conflict with a city charter, unless those statutes address the police powers or other matter reserved by the Constitution to the state, the city charter will prevail, unless the charter in question specifically states that it yields to the state statute.
 {¶ 73} Because the Brook Park city charter defers in places to the state statutes, a review of the state statutes addressing municipal governments is helpful to determine the powers and duties of the parties to this action.
 C. OHIO STATUTES GOVERNING CITY GOVERNMENT {¶ 74} The pertinent statutes are found in Chapter 7 of the Revised Code. The powers of a legislative body are defined in R.C. 731.05:
 {¶ 75} "The powers of the legislative authority of a city shall be legislative only, it shall perform no administrative duties, and it shall neither appoint nor confirm any officer or employee in the city government except those of its own body, unless otherwise provided in Title VII [7] of the Revised Code. All contracts requiring the authority of the legislative authority for their execution shall be entered into and conducted to performance by the board or officers having charge of the matters to which they relate. After the authority to make such contracts has been given and the necessary appropriation made, the legislative authority shall take no further action thereon."
 {¶ 76} The mayor cannot execute a contract without council approval; that is, without the appropriation of funds to support the contract. Once the contract is made, however, council is permitted no further involvement with it.
 {¶ 77} The powers vested in a mayor of a city are defined in R.C. 733.03:
 {¶ 78} "The mayor shall be the chief conservator of peace within the city. He may appoint and remove the director of public service, the director of public safety, and the heads of the subdepartments of public service and public safety, and shall have such other powers and perform such other duties as are conferred and required by law.
 {¶ 79} "In any city the legislative authority thereof may, by a majority vote, merge the office of director of public safety with that of director of public service, with one director to be appointed for the merged department, and the director of the merged department shall have those qualifications provided in section 735.01 of the Revised Code."
 {¶ 80} The power to execute contracts, although not included in this statute, is also not in conflict with the statute and properly belongs to the mayor.
 {¶ 81} The law director's duties and powers are defined in R.C. 733.51:
 {¶ 82} "The city director of law shall prepare all contracts, bonds, and other instruments in writing in which the city is concerned, and shall serve the several directors and officers provided in Title VII [7] of the Revised Code as legal counsel and attorney.
 {¶ 83} "The director of law shall be prosecuting attorney of the mayor's court. When the legislative authority of the city allows assistants to the director of law, he may designate the assistants to act as prosecuting attorneys of the mayor's court. The person designated shall be subject to the approval of the legislative authority."
 {¶ 84} The Brook Park city charter provision adding duties and responsibilities to the office of law director enhance his duties and do not negate or conflict with any of the provisions of the statute.
 {¶ 85} Finally, concerning municipal expenditures, R.C. 705.20
states:
 {¶ 86} "No warrant for the payment of any claim shall be issued by the auditor until such claim is approved by the head of the department for which the indebtedness was incurred."
 {¶ 87} This statute conforms with section 7.05 of the city charter. Without the approval of the law director, therefore, council cannot approve mayor's request to appoint Duvin, Cahn as special counsel to assist the law director in representing the city before S.E.R.B.
 D. R.C. 4117 VS. HOME RULE {¶ 88} Another question is whether the mayor may select his own representative for union negotiations. R.C. 4117.10 defines the roles of the mayor and the council:
 {¶ 89} "(B) The public employer shall submit a request for funds necessary to implement an agreement and for approval of any other matter requiring the approval of the appropriate legislative body to the legislative body within fourteen days of the date on which the parties finalize the agreement, unless otherwise specified, but if the appropriate legislative body is not in session at the time, then within fourteen days after it convenes. The legislative body must approve or reject the submission as a whole, and the submission is deemed approved if the legislative body fails to act within thirty days after the public employer submits the agreement. The parties may specify that those provisions of the agreement not requiring action by a legislative body are effective and operative in accordance with the terms of the agreement, provided there has been compliance with division (C) of this section. If the legislative body rejects the submission of the public employer, either party may reopen all or part of the entire agreement.
 {¶ 90} "(C) The chief executive officer, or the chief executive officer's representative, of each municipal corporation * * * is responsible for negotiations in the collective bargaining process; except that the legislative body may accept or reject a proposed collective bargaining agreement. When the matters about which there is agreement are reduced to writing and approved by the employee organization and the legislative body, the agreement is binding upon the legislative body, the employer, and the employee organization and employees covered by the agreement." (Emphasis added.)
 {¶ 91} The mayor argues that the statute, which authorizes him to select his representative, overrides any limitations imposed on his ability to contract with the representative of his choice, in this case a law firm, to serve as his representative. In the instance of the mayor's representative, the mayor is not selecting legal counsel; he is selecting for the collective bargaining process a representative that happens to be a law firm. He is not hiring it in its legal capacity, but rather for its expertise in negotiating labor matters. He is not, therefore, impinging on the authority of the law director. Part of the confusion in the case at bar stems from the fact that the mayor's chosen representative is a law firm. There is no requirement that the representative be a lawyer.
 {¶ 92} The Supreme Court of Ohio held in Rocky River v. S.E.R.B.
(1989), 43 Ohio St.3d 1, 52, that "the Ohio Public Employees' Collective Bargaining Act, R.C. Chaper 4117, * * * [is] constitutional as [it] fall[s] within the General Assembly's authority to enact employee welfare legislation pursuant to Section 34, Article II of the Ohio Constitution. Section 3, Article XVIII of the Ohio Constitution, the home-rule provision, may not be interposed to impair, limit or negate the Act." Id. at 52. The mayor is correct in arguing, therefore, that council lacks the authority to impose its choice of representative for the collective bargaining process.
 {¶ 93} Council argues, on the other hand, that only it has the authority to award a contract, and that only council may authorize the funds necessary to pay on the contract. Every expenditure must be adopted by ordinance by council, council argues, and it may revise the proposed ordinance before it adopts it, if it so desires. Council may also subsequently amend or supplement the contract. Charter provision 7.05(c);Huddle v. Evans (1961), 172 Ohio St. 144, 145 ("where it is necessary for the legislative branch of a municipality to authorize an expenditure, * * * such legislative body has the power to incorporate in the authorizing ordinance specifications and conditions binding on the administrative agency.")
 {¶ 94} Pursuant to this belief, in July of 2000, council passed several ordinances essentially firing the mayor's choice of counsel and hiring its own. As previously noted, however, the contract with the new firm could not take effect without the mayor executing it, and he did not execute it. Council subsequently revoked the ordinances[6] and replaced them with an ordinance stating in part: "The City Council may upon request of the Mayor or Law Director authorize the employment of co-counsel with a special expertise or knowledge to assist the Law Director in performing his duties pursuant to the charter. * * *"
 {¶ 95} Taking the charter in pari materia, however, we find that council acted within its authority in passing this prospective ordinance. But we also find that this ordinance does not conflict with the mayor's selection of his representative: the ordinance provides counsel to assist the law director, not the mayor. Section 5.01 of the city charter grants authority to council to organize the law department and the duties of its members. The law department is under the domain of council, not the mayor. Its director is an elected official whose only duty to the mayor is to represent the city as mandated by the charter and to "perform such other duties as * * * the mayor may impose upon him consistent with his office." City Charter section 6.02.
 {¶ 96} Council did not err in passing this amended statute. It is mistaken, however, in arguing that the mayor hired Duvin, Cahn to assist the law director. The mayor hired the firm as his representative in negotiating the union contract. If the mayor additionally wants it to represent the city before S.E.R.B., the procedure is for council, pursuant to his request, to consider awarding the contract and appropriate funding for it. The funding for that contract would first have to be approved by the law director and certified by the finance director to council or the law director. The mayor, therefore, may select his representative for the collective bargaining, but he may not appoint his representative to replace the law director as the city's counsel before an administrative board, including S.E.R.B.
 {¶ 97} "When a city charter imposes a duty on the law director to represent the city in all its litigation, the charter prohibits, by implication, the city from appointing outside counsel, in place of the regular law director, to represent the city in litigation. * * * Therefore, in light of its charter, the city, as a general matter, could not employ outside counsel as a substitute for its law director."Cuyahoga Falls v. Robart (1991), 58 Ohio St.3d 1, 5.
 {¶ 98} The law director's bias on the question of unionizing the city workers is not considered an impediment to his representing the city before S.E.R.B. As the Supreme Court stated in Robart when the Court denied a conflict of interest because of a bias on the part of the law director, "the law director is not disqualified from representing the city merely because he agrees with the mayor's position. In the absence of any other factor disqualifying or disabling the law director from acting, the city had no authority under the charter to provide for the appointment of outside counsel to represent the city." Robart at 6. The law director's bias in favor of council over the mayor's position in this case, similarly, does not disqualify him from representing the city before S.E.R.B.
 {¶ 99} In negotiations with the union, the city is represented by the mayor. The mayor may select his representative for collective bargaining without interference or approval from the law director. But payment to that representative can only be made if, after the finance director has certified in writing to the council that the funds necessary for the contract are available, council votes by ordinance to appropriate the necessary funds to pay that representative. Council, therefore, cannot necessarily choose the representative. That is the mayor's prerogative. Council can, however, refuse to vote the funds necessary for the contract with the mayor's chosen representative.
 {¶ 100} Further, the charter mandates that only the law director may represent the city before any administrative body. It is important to distinguish the negotiations with the union, which are the province of the mayor, and legal representation before the actual administrative board, which is the province of the law director. While the mayor may choose his representative for the negotiations, he cannot supplant the law director in his role representing the city before S.E.R.B.
 {¶ 101} The ordinance concerning the hiring of outside counsel to assist the law director does not violate the city charter and is enforceable. The trial court's ruling that city council exceeded its authority by passing this ordinance is, therefore, reversed. The city council's attempt to terminate the mayor's use of Duvin, Cahn as his representative for labor negotiations is a moot issue, because city council revoked that ordinance.
 {¶ 102} These assignments of error are affirmed in part and overruled in part.
 {¶ 103} The last assignment of error is unrelated to the others and states:
 {¶ 104} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT GRANTING THE PRESIDENT OF COUNCIL, RICHARD A. SALVATORE'S MOTION TO DISMISS WHERE THERE IS A TOTAL LACK OF EVIDENCE CONNECTING HIM WITH THE COMPLAINT." (Council president's brief)
 {¶ 105} The president of council, Richard Salvatore, objects to being named in this suit in his capacity as president of city council. He argues that because he did not have a vote in the council action which enacted the ordinances in question he is not properly a party.
 {¶ 106} The role of council president is defined in city charter section 4.02, which states:
 {¶ 107} "It shall be the duty of the President of Council to preside at all meetings of Council, appoint various Council Committees, and perform such other duties as are imposed upon him by this Charter, co-ordinating the work of the various committees appointed by him. The President of Council shall have the right to vote on all ordinances, resolutions, or motions coming before the Council only in the event of a tie-vote." (Emphasis added.)
 {¶ 108} The council president is also charged with signing every ordinance passed by council before it is presented to the mayor for approval. City charter section 3.03(b).
 {¶ 109} Unfortunately for council president, he did not file his motion to dismiss until nine days after the trial court made its ruling and judgment entry dismissing the case. Because the case had already been dismissed with prejudice, the court was without authority to rule on any subsequent motion. "When a trial court unconditionally dismisses a case * * *, the trial court patently and unambiguously lacks jurisdiction to proceed * * *."Page v. Riley (1999), 85 Ohio St.3d 21, 623.
 {¶ 110} Because council president's motion to dismiss was filed after the case had been dismissed, the trial court lacked jurisdiction to address it and we lack jurisdiction to review it.
 {¶ 111} This assignment of error is overruled.
 {¶ 112} The trial court is affirmed in part and reversed in part. The trial court is affirmed in its ruling that the mayor has exclusive authority to select his representative for negotiations with the union. The trial court is also affirmed in its ruling that city council does not have the authority to execute a contract with counsel of its choice or to actually enter into or execute contracts. The trial court is reversed, however, and we hold: (1) that city council may deny funding for the mayor's retention of the representative of his choice; (2) that city council did not exceed its authority in passing the ordinance pertaining to the hiring of outside counsel; (3) that council is not limited to only imposing a procedure for awarding contracts; but rather, (4) that council can award contracts.
It is, therefore, ordered that appellants recover of appellee their costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., CONCURS; ANN DYKE, J., CONCURS IN JUDGMENTONLY.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] The trial court did not have the benefit of having the whole charter before it.
[2] Despite the mayor's suggestion that the court review the parties' history of practice, the record is also devoid of any history of the way the city dealt with contracts in the past.
[3] If this arrangement with Duvin, Cahn indeed had been made without proper authorization, council acted properly in terminating it, albeit for the wrong reason. Case law says that if a contract is not signed by the mayor, even though it was awarded by council, it is not binding. Conversely, even if a contract is signed by the mayor or his representative, unless it is awarded by council, it is not binding.Universal Destructor v. Weigand (1927), 26 Ohio App. 154; Landco, supra. A contract entered into in violation of the terms of the city charter is void, and "the city is under no obligation whatsoever to honor it."Citizens for Fair Taxation v. Toledo (1992), 90 Ohio App.3d 272,278.
[4] In addition to the duties stated in the text, the charter states that the council is responsible for the following: all legislation in the city; fixing compensation, sick leave and vacation time for city employees; authorizing travel of officers of the city; calling special meetings; adopting rules for its meetings and keeping a journal of those meetings; making provision by ordinance for making public improvements and levying assessments, selling or disposing of municipal property, making general regulations as they may deem necessary, and enacting emergency legislation. All actions taken by council must be by ordinance or resolution.
[5] The charter lists the duties and powers of the mayor as follows: supervising the administration of city affairs; exercising control over departments and divisions; being conservator of peace; seeing that all laws and ordinances are enforced; preparation and submission to council of expenditures; keeping council advised of the financial situation in the city; recommending measures to council; seeing that all terms and conditions of any contract to which the city is a party are faithfully kept and performed; appointing employees; annually reviewing the wages of city employees and submitting a recommendation to council on them; executing on behalf of the city all contracts, etc.; keeping custody of the seal of the city; and vetoing ordinances and resolutions passed by council, which veto can be overridden by council.
[6] Because these ordinances were revoked, we will not address the question of whether they were enforceable.