[Cite as *Watson v. Cuyahoga Metro. Hous. Auth.*, 2014-Ohio-1617.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99932**

# KIM WATSON, ET AL.

PLAINTIFFS-APPELLEES

vs.

# CUYAHOGA METROPOLITAN HOUSING AUTHORITY, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-761704

**BEFORE:** Kilbane, J., Boyle, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:** April 17, 2014

**ATTORNEYS FOR APPELLANTS**

Christopher P. Thorman
Mark D. Griffin
J. Matthew Linehan
Thorman, Petrov, Griffin Co., L.P.A.
3100 Terminal Tower
50 Public Square
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEES**

Thomas H. Barnard
Michelle R. Arendt
Josephine S. Noble
Ogletree, Deakins, Nash, Smoak, Stewart
127 Public Square
4130 Key Tower
Cleveland, Ohio 44114

MARY EILEEN KILBANE, J.:

{¶1} Plaintiffs-appellants Kim Watson ("Watson"), Linda Stamper ("Stamper"), and William Lowe ("Lowe") appeal from the order of the trial court that awarded summary judgment to defendants-appellees the Cuyahoga Metropolitan Housing Authority ("CMHA") and George Phillips-Oliver ("Phillips-Oliver") in plaintiffs' action for wrongful termination. Plaintiffs assign the following errors for our review:

> **I. The trial court erred when it failed to determine that the CMHA videos were public records.**
>
> **II. The trial court erred when it held that a public employee may be fired for requesting public records that embarrass the employer.**
>
> **III. The trial court erred by failing to consider separately each Appellant's claim.**
>
> **IV. The trial court erred when it refused to order discovery of evidence then granted summary judgment to CMHA and as to Appellants' affirmative defenses citing lack of evidence.**
>
> **V. The trial court erred in concluding that convicted felon Phillips-Oliver is entitled to immunity.**

{¶2} Having reviewed the record de novo, and by application of the controlling case law, we find the assignments of error lack merit. We therefore affirm the judgment of the trial court.

### Pre-Litigation Events

{¶3} On May 6, 2010, CMHA police arrested Navario Banks ("Banks") for carrying a concealed weapon, drug possession, and theft of a motor vehicle. On May 24,

2010, Banks's mother, Watson, who was employed by CMHA, approached Stamper, the CMHA manager of daily operations. Watson asked to view CMHA video surveillance in order to substantiate Banks's assertion that at the time of the offenses being investigated by CMHA police, he was at the King Kennedy housing complex. Stamper informed Watson that she did not know how to play back the footage and that Watson would have to check with Lowe, the security camera specialist for CMHA. Watson, Lowe, and Stamper subsequently viewed the portion of surveillance video that depicted Banks's activities. Stamper then allowed Watson, with the assistance of Lowe, to make a copy of the videotape.

{¶4} Banks received a copy of the video, but was unable to view it, so he requested that Lowe come to his attorney's office to play the video. On June 29, 2010, Lowe went to the office of Banks's attorney and played the video, and also agreed to Banks's request that he testify as a witness for him in the pending criminal matter. Following that meeting, Lowe informed his boss, Don Butler, IT director at CMHA, of the video and the request for testimony.

{¶5} CMHA conducted an investigation into the matter and obtained, inter alia, letters from Watson about her actions, as well as statements from Stamper and Lowe. CMHA held a pre-disciplinary hearing and subsequently determined that plaintiffs had performed personal business for the benefit of a third party while on duty. CMHA additionally concluded that they had used their position to access and obtain information

that was the property of CMHA for the purpose of assisting a third party with an adverse interest to CMHA, in violation of the conflict of interest policy. All three plaintiffs were terminated on July 9, 2010.[1]

## Litigation

{¶6} On August 10, 2011, plaintiffs filed suit against CMHA and its then-Chief Executive Officer, Phillips-Oliver. In their first amended complaint for relief, plaintiffs alleged that they were wrongfully discharged in violation of public policy because "CMHA police [have] a duty to disclose evidence materially favorable to an accused criminal defendant," and because "Ohio has a * * * public policy committed to open records." They further alleged that their firings were unrelated to their job performance or employer policies, and that they were terminated for requesting and obtaining public records.

## Summary Judgment

{¶7} On May 9, 2012, defendants moved for summary judgment. In support of this motion, defendants presented evidence that plaintiffs accessed CMHA property while on work time, contrary to CMHA policies and practices, and without proper authorization. In relevant part, defendants presented Administrative Order 18, promulgated in 2003, that requires the law department to review and authorize the release of any and all records requested in a public records request. The records are not

---

[1]On September 22, 2010, Banks pled guilty to attempted carrying concealed weapons in violation of R.C. 2923.02 and 2923.12, a first-degree misdemeanor.

provided until a review is conducted and if the records are to be released, the requesting party pays a copying fee. According to CMHA Ombudsman Dorothy Noga-McCarthy, there is a "general understanding that if you don't know where else to go" she can handle questions about public records. She refers requests to the legal department and goes to the CMHA police for issues involving videos.

{¶8} CMHA general counsel Audrey Davis testified in deposition that all public records requests are considered on a case-by-case basis. According to this witness, the video in question is not a public record, but rather, is a confidential law enforcement investigatory record. In addition, CMHA's conflict of interest policy bars the misuse of CMHA's confidential information and prohibits, among other things, the providing to any person, in a preferential manner, aid or documents that are not available to the general public, and using the employee's position to achieve personal gain that ordinarily would not have been available to the employee. These disciplinary policies are set forth in Administrative Order 11, copies of which Watson and Lowe acknowledged receiving.

{¶9} CMHA also presented evidence that the CMHA police must be consulted in responding to a request for video surveillance. According to CMHA Detective William Higginbotham ("Detective Higginbotham"), all video surveillance is monitored by the police. In addition, according to CMHA director of asset management Carolyn Gaiter, and Detective Higginbotham,[2] under CMHA policy, a CMHA police officer must be

---

[2] Detective Higginbotham and his partner were also involved in arresting Banks after Detective Higginbotham's partner, Sergeant Herensky, had observed him in connection with a stolen motor vehicle.

present to rollback and view previously recorded footage, and to download and copy surveillance footage.

{¶10} Defendants' evidence demonstrated that the foregoing procedures were not followed in this matter. Rather, according to evidence presented by defendants, during the workday, Watson admitted that she came to Stamper and asked to view surveillance footage from King Kennedy, telling Stamper that the CMHA police had accused her son of stealing a van, and that the "camera would validate that he couldn't have possibly been at the location that CMHA police said he was at committing a crime." Stamper could not rewind the footage so she directed Watson to contact Lowe. Lowe admitted that during the discussion with Watson, Watson informed him that "her son was being ask[ed] questions and was detained by CMHA police * * * and asked if she could see the video." He then let her have a copy of it. Approximately ten days later, Lowe met with Banks at a nearby McDonald's and explained to him how to view the recording and he also met with Banks's attorney, and assisted her in viewing it.

{¶11} Defendants also presented deposition testimony from Mark Hunt, director of human resources, that if the matter had related to CMHA business, Stamper was authorized to obtain the record. Stamper had no such authority, however, when the matter involved personal business, rather than CMHA business. Lowe's position involved getting the cameras in place, setting them up and making sure that they were working.

{¶12} Further, CMHA Police Chief Andreas Gonzalez ("Gonzalez") testified during deposition that he had informed Lowe and other management leaders, prior to this matter, that requests to rollback and copy video surveillance footage had to be submitted to the CMHA police department. Emails predating this incident also reminded Lowe to contact the CMHA police to have the review and download the videotape of where alleged illegal activity has occurred. According to Detective Higginbotham, there was no "chain of custody" for the video Watson obtained, and after learning of this incident, Gonzalez told Lowe that he had interfered with a criminal investigation.

{¶13} Gonzalez concluded that plaintiffs had breached CMHA security when they downloaded the video. Plaintiffs were ultimately terminated for violating the conflict of interest policy and taking actions to benefit a third party (Banks) who had an adverse interest to CMHA, and disclosing CMHA property to a third party without proper authorization. Defendants maintained that there was no evidence that plaintiffs were terminated for making a public records request. Finally, defendants maintained that the circumstances of the terminations do not jeopardize public policy, and there was no evidence that the reasons offered for the terminations were a pretext.

{¶14} In opposition, plaintiffs asserted that the terminations violated Ohio's public policy favoring open public records, and the duty to provide exculpatory evidence to a criminal defendant, and that CMHA retaliated against plaintiffs. They maintained that the videotape was generally available to the public, and that CMHA had waived any

claim that disclosure of the videotape should have been conducted within the parameters of Civ.R. 16.

{¶15} Plaintiffs presented deposition testimony from CMHA Ombudsman Dorothy Noga-McCarthy who stated that requests for public records must be made during working hours and do not have to be made in writing. Plaintiffs also presented evidence that Watson did not know of the public records procedure, that CMHA's public records policy was never distributed to employees and that there are no written rules prohibiting Lowe from giving copies of security footage to anyone. Plaintiffs also presented deposition testimony from Stamper in which she stated that she understood her job as requiring her to fulfill requests "[w]hen the public requests anything that was public." She did not believe that she had to go through the legal department or the police department. Stamper stated that she had authority to provide the public with police reports, and had previously rewound and inspected videos.

{¶16} The evidence presented by plaintiffs further indicated that time was of the essence because security cameras at CMHA continually record over prior videos. Plaintiffs also presented evidence that in prior years requests for video surveillance had to be reported to CMHA police but, according to plaintiffs, after Lowe became CMHA camera specialist, Lowe routinely handled such requests. Lowe averred that he never received a written public records policy, and was never instructed to consult with the legal department in responding to public records requests. He admitted, however, that the DVD that recorded the footage was password protected.

**{¶17}** As to the issue of pretext, plaintiffs noted that Phillips-Oliver had conceded that it would negatively impact the housing authority's reputation in the community if evidence established that CMHA withheld exculpatory evidence in connection with a prosecution. This admission, as well as Phillips-Oliver's convictions for lying to investigators and bribery in an unrelated federal corruption probe, were, according to plaintiffs, "highly probative" in determining whether the offered reasons for the terminations (violation of conflict of interest and public records policies) were simply a pretext.

### Plaintiffs' Motion to Compel

**{¶18}** On November 21, 2012, plaintiffs filed a motion to compel discovery in which they asserted that defendants failed to comply with a court order requiring them to produce the electronic versions of the pre-disciplinary letters and termination letters, and other documents. Plaintiffs asserted that they are entitled to communications from CMHA general counsel Audrey Davis, "decision-maker notes," and other documents, and that the documents are not privileged. Defendants opposed the motion and on December 20, 2012, the trial court held a hearing on the matter, at which the trial court heard extended argument. On January 14, 2013, the trial court issued the following order:

> Plaintiffs' mtn to compel discovery and for sanctions is granted and denied in part. * * * Defts have chosen to not waive certain atty client privileges relative to counsel [Audrey] Davis and CMHA. That declaration means certain of the discovery pltfs sought by this motion can not be ordered by this court. The parties advised that contact information for certain witness was previously produced and therefore that part of pltfs' motion is moot. This court is satisfied that defts have thoroughly searched its computer records for all versions of the pre-disciplinary and termination

letters and this court will not order defts to look further. This may well leave pltfs with evidence and argument to the jury that such letters did exist but were not produced by defts despite proper request therefor. In all other respects, pltfs' motion is denied.

**Trial Court's Final Order**

**{¶19}** On May 1, 2013, the trial court granted defendants' motion for summary judgment. In a 28-page opinion, the trial court determined that there was no evidence that Phillips-Oliver acted with a malicious purpose, in bad faith or in a wanton or reckless manner, so it found him immune from liability under R.C. 2744.03(A)(6)(3).

**{¶20}** The court also concluded that defendants were entitled to judgment as a matter of law on plaintiffs' claim of wrongful discharge in violation of public policy since defendants, a public housing entity and official, have no duty to provide plaintiffs with evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The evidence also established that plaintiffs' actions were motivated by a desire to help Banks, and were not motivated by conduct related to public policy concerning public records. The court stated that there was no indication that had plaintiffs accessed the video consistently with their employer's interest, they would have been terminated.

**{¶21}** The undisputed evidence established that Banks had received the video at no charge and without review by the CMHA police or legal department, and the court noted that the "objective of R.C. 149.43 is not to allow employees of public offices to use their superior position of employment to gain access to any record, for any purpose, at any time, without proper checks and balances," and at no charge to Banks.

**{¶22}** The court concluded that plaintiffs' termination did not jeopardize the goals of the public records act because "they had available remedies under R.C. 149.43(C); and Banks had rights under Crim.R. 16[.]" Finally, the trial court concluded that defendants had articulated a legitimate reason for the dismissals and that plaintiffs failed to present evidence that this reason was a mere pretext in order to terminate plaintiffs for viewing a public record.

### Review of Ruling on Motion to Compel Discovery

**{¶23}** Within the fourth assignment of error, plaintiffs assert that the trial court erred in denying their November 21, 2012 motion to compel discovery in which they sought communications, including decision-maker notes, and drafts of documents from CMHA general counsel Audrey Davis, in order to discover her role in the terminations, the advice she provided, and whether that advice was heeded.

**{¶24}** Trial courts have broad discretion over discovery matters. *State ex rel. Duncan v. Middlefield,* 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 27. Generally, if the discovery issue involves an alleged privilege, as in this case, it is a question of law that must be reviewed de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13. However, the Supreme Court has characterized the determination of whether materials are protected by the attorney work-product privilege and the determination of the good-cause exception to that privilege, not as questions of law, but as discretionary determinations to be made by the

trial court. *State ex rel. Greater Cleveland Reg. Transit Auth. v. Guzzo*, 6 Ohio St.3d 270, 271, 452 N.E.2d 1314 (1983).

{¶25} Under Civ.R. 26(B)(1), the scope of pretrial discovery is broad and parties may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter. Under the attorney-client privilege, (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived. *State ex rel. Leslie v. Ohio Hous. Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 21. *See also* R.C. 2317.02.

{¶26} The attorney-client privilege applies to pertinent communications between attorneys and their corporate clients, just as between attorneys and their individual clients. *Leslie* at ¶ 22; *MA Equip. Leasing I, LLC v. Tilton*, 10th Dist. Franklin Nos. 12AP-564 and 12AP-586, 2012-Ohio-4668, ¶ 33 (in general, the privilege extends to the communications of in-house counsel.). Moreover, an attorney "does not become any less of an attorney by virtue of state agency employment." *State ex rel. ESPN, Inc. v. Ohio State Univ.*, 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 38, quoting *Leslie* at ¶ 29.

{¶27} R.C. 2317.02(A) provides the exclusive means by which privileged attorney-client communications can be waived by the client: (1) the client expressly

consents; or (2) the client voluntarily testifies on the same subject. *State v. McDermott*, 72 Ohio St.3d 570, 1995-Ohio-80, 651 N.E.2d 985.

{¶28} Furthermore, pursuant to Civ.R. 26(B)(3), the work-product doctrine provides for a limited privilege that protects documents, electronically stored information and other tangible things "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative * * *only upon a showing of good cause therefor."

{¶29} The work-product privilege belongs to the attorney, and protects the attorney's mental processes in preparation of litigation, so that the attorney can analyze and prepare their client's case free from scrutiny or interference by an adversary. *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 55. Attorney work product may be discovered upon a showing of good cause if it is directly at issue in the case, the need for the information is compelling, and the evidence cannot be obtained elsewhere. *Id.* at ¶ 60.

{¶30} In this matter, the record reflects that plaintiffs deposed CMHA general counsel Audrey Davis during the course of discovery, on July 11, 2012. She was involved in the investigation of this matter, and was involved in pre-termination meetings with plaintiffs. She was not a member of the management committee, but rather, gave legal advice in executive sessions with managers who made the decision to terminate plaintiffs. She stated that there was no privilege as to meetings in the presence of plaintiffs but she was not waiving the privilege as to her role in advising CMHA. She

stated that the video was subject to CMHA's public records policy but she denied that it was a public record, and that Crim.R. 16 offers the sole means of its disclosure. She also stated that it was not the role of CMHA police to provide Banks with exculpatory evidence, and that such responsibility rested with the prosecutor's office. CMHA also asserted the attorney-client privilege, and produced a privilege log on June 28, 2012.

**{¶31}** At the December 20, 2012 hearing, CMHA emphasized that Davis's role was to provide legal advice to CMHA. Defense counsel offered to let the court examine various documents in its privilege log to determine if there was discoverable information. The record indicates that Davis was not part of the management team and that she provided legal advice in anticipation of a specific concern for possible litigation. The record does not support the plaintiffs' claim that Davis simply assisted CMHA with its business decisions or a human relations matter. Moreover, plaintiffs did not make the requisite showing in order to obtain information protected by work product. We therefore conclude that this portion of the assignment of error is without merit.

**{¶32}** Plaintiffs also raise the related argument that the trial court erred insofar as it allowed defendant Phillips-Oliver to use the defense of sovereign immunity because it was premised upon his reliance upon the advice of counsel, without requiring the disclosure of the content of the communications between him and his attorney.

**{¶33}** As an initial matter, we note that the key issue in overcoming sovereign immunity is whether Phillips-Oliver's acts or omissions were manifestly outside the scope of his employment or official responsibilities or whether he acted with malice, in bad

faith, or in a wanton or reckless manner. *See* R.C. 2744.03(A)(6). In this connection, Phillips-Oliver maintained that he exercised reasonable care in his decision and that he terminated plaintiffs after a thorough investigation.

{¶34} In any event, the exclusive means of waiver of attorney-client privilege set forth in R.C. 2317.02(A) were not met because the client did not expressly consent, and the individual CMHA employees may not waive a privilege that is owned by the entire organization. *Carver v. Deerfield Township*, 139 Ohio App.3d 64, 742 N.E.2d 1182 (11th Dist.2000); *Riggs v. Richard*, 5th Dist. Stark No. 2007CA00328, 2008-Ohio-4697, ¶ 18.

{¶35} The fourth assignment of error is without merit.

**Phillips-Oliver's Immunity**

{¶36} Plaintiffs next assert, in the fifth assignment of error, that the trial court erred in determining that Phillips-Oliver was entitled to sovereign immunity as a matter of law. Plaintiffs contend that he waived this affirmative defense by failing to timely and explicitly raise it, and by failing to appeal the trial court's denial of his motion to dismiss pursuant to Civ.R. 12(B)(6). They further argue that they presented evidence to create a jury question as to whether he acted with malice, in bad faith, or in a wanton or reckless manner. *See* R.C. 2744.03(A)(6).

{¶37} As an initial matter, the trial court's denial of Phillips-Oliver's motion to dismiss the complaint under Civ.R. 12(B)(6), which asserted the affirmative defense of sovereign immunity, did not preclude the trial court from later awarding him summary

judgment, because the two motions are governed by entirely different standards. *Pyle v. Ledex, Inc.*, 49 Ohio App.3d 139, 143, 551 N.E.2d 205 (12th Dist.1988); Civ.R. 12(B)(6) and 56.

{¶38} As to the issue of timeliness, the trial court's decision granting leave to file an answer out of rule is reviewed for an abuse of discretion. *Sherrills v. Enersys Del., Inc.*, 8th Dist. Cuyahoga No. 98319, 2012-Ohio-5183, ¶ 11. Here, the record reveals that plaintiffs' first amended complaint was filed on November 28, 2011. On December 12, 2011, Phillips-Oliver filed a motion to dismiss the complaint in which he asserted the defense of sovereign immunity. On June 28, 2012, the trial court denied this motion and on August 17, 2012, he filed a motion for leave to file an answer with affirmative defenses that the trial court granted on December 14, 2012. The trial court subsequently determined that "reasonable minds could only conclude that [Phillips-Oliver] acted inside the scope of his employment and did not act with malicious purpose, in bad faith, or in a wanton or reckless manner * * * therefore this Defendant is immune from liability." We conclude that the trial court acted within the proper exercise of its discretion in permitting him to file his answer with affirmative defenses in this matter.

{¶39} As to whether the trial court erred in awarding Phillips-Oliver summary judgment, he testified in deposition that CMHA's duty is to comply with the public records law and not simply release records. He stated that plaintiffs' actions impacted the operations of CMHA, had a direct bearing on a criminal matter, and had the potential to do great harm to CMHA. He noted that Don Butler of the IT department, and the

police are to be notified when copies of videos are requested, and that did not occur herein.

{¶40} On the record, there was no evidence that Phillips-Oliver acted manifestly outside the scope of his employment, or that he acted with willful misconduct, an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 32-34. Likewise, there was no evidence that he failed to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. *Id*. The trial court therefore properly awarded him summary judgment.

{¶41} The fifth assignment of error is without merit.

### The Video as a Public Record

{¶42} Within their first assignment of error, plaintiffs assert that the trial court erred when it failed to determine that the video is a public record.

{¶43} A "public record" is "any record that is kept by any public office," with certain specified exceptions. R.C. 149.43(A)(1). Nonetheless, certain records, such as confidential law-enforcement investigatory records, are exempt from disclosure under R.C. 149.43(A). Records that are discoverable under Crim.R. 16 are not thereby subject to release as a "public record" under R.C. 149.43. *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207, 1997-Ohio-169, 680 N.E.2d 985.

**{¶44}** When it receives a proper public records request, the custodian must provide inspection of the requested records promptly and within a reasonable period of time. R.C. 149.43(B). In addition, R.C. 149.43(B)(1) provides that copies of public records shall be made available "at cost."

**{¶45}** In this matter, CMHA general counsel Audrey Davis testified that she believed that the video was a confidential law enforcement record so it was exempt from disclosure. Nonetheless, CMHA's legal department was deprived of the opportunity to determine whether the record was subject to disclosure or whether it was exempt as a confidential law enforcement. As noted by the trial court:

> This dispute has no significance here because at the time of Plaintiffs' conduct which resulted in their firing, CMHA did not know about the video footage of Banks and was not actively factoring it into his prosecution. * * * Whether a public records request or not, Plaintiffs were reviewing video surveillance footage for non-employment purposes which clashed with [the] employer's interests in detecting and prosecuting lawbreakers on their property.

**{¶46}** The record demonstrates that plaintiffs' actions provided Watson with an immediate, free copy of the video after Banks had been arrested and charged with a crime by CMHA officers. In addition, Lowe assisted Banks's attorney in viewing the video footage. In making the decision to terminate plaintiffs, CMHA determined that plaintiffs used for "their personal benefit or the gain of another, any confidential information

obtained" through their employment, "providing in a preferential manner, information, aid or documents * * * not available or open to the general public," and also made a general determination that plaintiffs "engaged in activity * * * which conflicts with the interest of CMHA." We therefore conclude that the first assignment of error is without merit.

## Review of Award of Summary Judgment to CMHA

{¶47} A reviewing court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Mitnaul v. Fairmount Presbyterian Church*, 149 Ohio App.3d 769, 2002-Ohio-5833, 778 N.E.2d 1093 (8th Dist.). Therefore, this court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12, 467 N.E.2d 1378 (6th Dist.1983).

{¶48} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶49} Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), the nonmoving party must set forth specific facts, demonstrating that a "genuine triable issue"

exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449, 1996-Ohio-211, 663 N.E.2d 639.

**{¶50}** With regard to the substantive law, we note that in 1990, the Ohio Supreme Court recognized an exception to the employment-at-will doctrine that applies when an at-will employee is discharged or disciplined for reasons that contravene clear public policy expressed by the legislature in its statutes. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), paragraph one of the syllabus. In order to prevail on a cause of action for wrongful termination in violation of public policy, a plaintiff must prove that: (1) a clear public policy exists as manifested in a state or federal constitution, statute, or administrative regulation, or in the common law (the "clarity element"); (2) dismissing employees under the circumstances presented would jeopardize the public policy (the "jeopardy element"); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation element"); and (4) the employer lacked an overriding legitimate business justification for the dismissal (the "overriding-justification element"). *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 9.

**{¶51}** The clarity and jeopardy elements are questions of law to be decided by the court. *Collins v. Rizkana*, 73 Ohio St.3d 65, 70, 1995-Ohio-135, 652 N.E.2d 653. When analyzing the jeopardy element, a court must inquire "into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim." *Wiles v. Medina Auto Parts*, 96 Ohio St.3d

240, 244, 2002-Ohio-3994, 773 N.E.2d 526. If a statutory remedy already exists that adequately protects society's interests already exists, then there is no need to recognize a claim for wrongful discharge in violation of public policy. *Id*. The causation and overriding justification elements are questions of fact. *Rizkana* at 70.

{¶52} With regard to the first element, the plaintiffs advanced the contention that Ohio public policy prohibits the termination of an employee for accessing public records, and also prohibits the termination of an employee who seeks exculpatory evidence for a criminal defendant. The trial court rejected both of those claims and determined, as a matter of law, that plaintiffs could not meet the clarity or jeopardy elements of their claim for relief. The court stated:

> The Ohio Public Records Act nor the federal Freedom of Information Act] do not apply as neither statute clearly affords protection to employees who violate procedures. Also, both statutes list certain exemptions to disclosure and therefore the right to access public records is not automatic or without limitation. * * *

> * * * [As to the claim regarding exculpatory evidence,] the undisputed evidence shows that Defendants were not Banks' prosecutors, but CMHA's police caused and [were] supporting his prosecution. More to the point, Plaintiffs were not obligated to fulfill the prosecutors' duties and provide Banks with exculpatory information.

> Plaintiffs do not argue that they were motivated by these laudatory goals in their actions; they admit that their actions were to benefit Watson's son who faced criminal charges.

{¶53} The trial court additionally held that plaintiffs' claims failed because they could not show that the circumstances of their terminations jeopardized public policy. The Court noted:

Plaintiffs were not terminated for merely requesting a public record. They were terminated for their conduct in obtaining the employer's video in pursuit of a purely private matter which happened to be adverse to the employer's interest in prosecuting those who commit criminal acts on their property. There is no indication that had plaintiffs accessed the video in pursuit of their job duties consistent with their employer's interest they would still have been terminated. It cannot be said that other employees will be discouraged from requesting public records for purposes related to CMHA's interests. The objective of R.C. 149.43 is not to allow employees of public offices to use their superior position of employment to gain access to any record, for any purpose, at any time, without proper checks and balances. CMHA's policies and procedures, implemented to ensure the agency functions properly, cannot be secondary to its duty to maintain public records and make them available to requesters. * * * The Court concludes that adequate protections exist for Public records under Ohio laws.

{¶54} This cogent reasoning follows as a matter of law from the undisputed evidence of record. The record supports the conclusion that plaintiffs used their employment in order to provide Watson with an immediate, free record, without review by CMHA legal staff. They acted outside of CMHA's public records policy, and inconsistent with the Ohio Public Records Act. In addition, they did not pursue evidence

through the prosecutor's office under the *Brady v. Maryland* framework, or within the procedures outlined in Crim.R. 16.

**{¶55}** Moreover, the formal pursuit of public records is protected by the remedies set forth in the act. Banks likewise had access to exculpatory evidence under the framework of Crim.R. 16. Given the court oversight and the penalties for failure to produce public records and for failing to provide exculpatory evidence, we conclude that Ohio's public policy is not jeopardized by plaintiffs' discharge. Accordingly, these essential elements of the claim for relief cannot be established as a matter of law, so we find that the trial court properly awarded defendants summary judgment on plaintiffs' claim for wrongful discharge in violation of public policy.

**{¶56}** The second and fourth assignments of error are without merit.

### Failure to Consider Plaintiffs' Individual Claims

**{¶57}** For their third assignment of error, plaintiffs assert that the trial court erred by failing to separately consider and address each of their claims. They contend that Watson acted properly in seeking a public record from Stamper, that Stamper had no interest in impermissibly assisting Watson and Banks, and that Lowe simply fulfilled his required job duty in providing the video footage.

**{¶58}** In the amended complaint, plaintiffs did not set forth individual claims. Rather, they collectively asserted that "defendants disciplined and terminated Plaintiffs employment because they requested, inspected or disclosed the public records." They

further allege that the terminations were "for reasons unrelated to their job performance."

{¶59}   The record demonstrates that the trial court's analysis gave proper consideration to the actions of each individual plaintiff because it concluded:

> The undisputed evidence here is that Watson was seeking help with a personal matter unrelated to her employment with CMHA, and that both Lowe and Stamper were aware of the personal nature of Watson's request for help.   The Court finds that there can be no exception to the employment at-will doctrine for such circumstances.

{¶60}   The third assignment of error is without merit.

{¶61}   Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, A.J., and
LARRY A. JONES, SR., J., CONCUR